CHARLES L. HUTCHINSON *et al.*

*v.*

RUSSELL ULRICH *et al.*

*Filed at Springfield, April 3, 1893.*

1. CONVEYANCE—*covenant in a deed creating an easement in adjacent property.* The owner of twelve lots, of fifty feet each, fronting on an avenue, conveyed lot 10 by a deed containing this provision: "It is understood and agreed, as a part of the consideration above expressed, that the purchaser is to erect on the premises described herein a single dwelling, costing not less than $7,500, said dwelling to be commenced within a period of forty-five days from this date. It is further agreed that the seller will sell the remaining lots * * * to parties who will cause to be erected single dwellings only on each lot of fifty feet." *Held,* that this provision inured to the benefit of all subsequent purchasers of the remaining eleven lots from the grantor, and that by the terms of the covenant an easement was created in their favor, as to all of the eleven

lots sold after the execution of the deed to lot ten, which a court of equity would enforce.

2. SAME—*intention of parties determined from the deed itself.* In such case the intention of the parties must be determined from the language of the deed itself, considered in connection with the surrounding circumstances at the time the deed was executed.

3. WORDS AND PHRASES—*the word "single" construed.* A deed for two lots, each of fifty feet frontage on the east, contained this restriction: "It is understood and agreed, as a part of the consideration expressed above, that only a single dwelling is to be constructed or placed upon each fifty-foot lot, and that no building shall be placed upon the east thirty feet of said premises:" *Held,* that the word, "single," referred to the structure and not to the use that should be made of the building, and meant that only one dwelling house should be erected on each fifty-foot lot; also, that the clause required the property to be used for residence purposes only.

4. In such case the parties holding under such deed had the right to erect a flat or apartment building, upon each of the lots, four stories high, with a partition on the line between the buildings, and to use the same for residences of families.

5. EVIDENCE — *expert testimony to explain the meaning of words in a deed.* A deed for two lots, of fifty feet frontage, in the city of Chicago, contained a restriction that only a single dwelling should be constructed upon each lot, and no usage or custom was shown under which the words, "only a single dwelling," had a local meaning in that city: *Held,* that as such words were not words of art, the opinion of experts or witnesses could not be received in evidence to show the meaning of such words, and whether a flat would be included within those words or not.

6. REAL PROPERTY—*restrictions in its use not favored.* When real property is conveyed in fee, restrictions in the use are not favored, but when the intention of the parties is clear in the creation of restrictions or limitations upon the use by a grantee, courts will enforce the same. If there is any doubt as to the existence of a restriction as to the use whereby a servitude is created in favor of other property, the doubt must be solved in favor of natural rights and against restrictions.

7. CONSTRUCTION—*of restrictions in deeds as to use of real property.* In this country real estate is an article of commerce, and the uses to which it should be devoted are constantly changing, as the business of the country and its new wants are developed; hence, it is contrary to business policy to tie up real estate, when the fee is conveyed, with restrictions and prohibitions as to its use; therefore, in the construction of deeds containing restrictions and prohibitions as to the use of property by a grantee, all doubts should, as a general rule, be resolved in favor of a free use of property and against restrictions.

22—145 ILL.

WRIT OF ERROR to the Circuit Court of Cook County; the Hon. M. F. TULEY, Judge, presiding.

This was a bill brought by Charles L. Hutchinson, Allison W. Harlan, James Mullen, George W. Chamberlain, and Alice M. Lawton, against Russell Ulrich and W. Irving Beman, to enjoin the erection of a "flats" building, or apartment house, on the corner of Greenwood avenue and 44th street, Chicago. In the Circuit Court a decree was rendered dismissing the bill for the want of equity, but without prejudice to the right of the complainants to sue at law. The complainants excepted to the decree, and sued out this writ of error. The facts out of which this litigation arose may be briefly stated: In March, 1889, plaintiff in error, Charles L. Hutchinson, being owner of a strip of land fronting on Greenwood avenue, and extending from 44th to 45th street, made and duly recorded a plat whereby he divided the property into a block of twelve lots numbered from 1, on the corner of 44th street, to 12, on the corner of 45th. Each lot has a frontage of substantially fifty feet and a depth of something over 150.

In making the plat, Hutchinson fixed a building line thirty feet from the line of Greenwood avenue. In April, 1889, he sold to plaintiff in error, Mullen, lot numbered 10. The deed, being otherwise in the ordinary form, contained the following words: "It is understood and agreed, as part of the consideration above expressed, that the purchaser is to erect on the premises described herein a single dwelling, costing not less than $7,500, said dwelling to be commenced within a period of forty-five days from this date. It is further agreed that the seller will sell the remaining lots fronting on Greenwood avenue, in said block, to parties who will cause to be erected single dwellings only on each lot or fifty feet."

Mullen built on lot 10 a house for a private residence, which cost him more than fourteen thousand dollars. Meantime Hutchinson proceeded to sell the other eleven lots. Be-

fore the close of the year 1890 he had sold and conveyed all, except lots 1 and 2. In October, 1891, and after his various deeds conveying the other ten lots had been recorded, he sold and conveyed to one Parrish lots 1 and 2. Afterwards, and after the deed to Parrish had been recorded, Parrish's grantee, Loomis, conveyed lots 1 and 2 to defendants in error, Ulrich and Beman, who, having procured from Peabody a loan for the purpose, commenced to erect on the two lots a flat, or apartment building, upon each of the lots, the building to be four stories high, with a partition on the line between the buildings. The deed from Hutchinson to Parrish, conveying lots 1 and 2, contains the following clause: "It is understood and agreed, as a part of the consideration expressed above, that only a single dwelling is to be constructed or placed upon each fifty-foot lot, and that no building shall be constructed or placed upon the east thirty feet of said premises." Parrish conveyed to Loomis by warrantee deed, without any restriction, and Loomis conveyed to Ulrich and Beman, the defendants, by warrantee deed, without restriction.

Mr. JOHN W. SHOWALTER and Messrs. EASTMAN & SCHUMACHER, for the plaintiffs in error:

By the covenant in Hutchinson's first deed an easement was created in favor of the grantee in all the other lots, which in equity inured to the purchasers of the remaining lots of the block. See *Tinker* v. *Forbes*, 136 Ill. 221; *Oswand* v. *Wolf*, 126 id. 542; *Parker* v. *Nightingale*, 6 Allen, 341; *Kirkpatrick* v. *Peshine*, 24 N. J. Eq., 206; *Trustees* v. *Byerch*, 70 N. Y. 440; *Whitney* v. *Union Ry. Co.*, 11 Gray, 359; *Peck* v. *Conway*, 119 Mass. 549; Washburn on Easements, etc., 103.

A court does not destroy a restriction by construction. The words are taken in their ordinary sense. *Dorr* v. *Hanahan*, 101 Mass. 534; *Linzie* v. *Mixer*, id. 530; *Clark* v. *Martin*, 49 Pa. St. 289; *Candest* v. *Sayre*, 46 N. J. Eq., 387.

The restriction to one single dwelling house means that the building shall be occupied by but one family.  *Gillis* v. *Bailey,* 21 N. H. 149.

Messrs. WILSON, MOORE and MCILVAINE, for the defendants in error:

The language in question is, at least, of uncertain meaning, and therefore the injunction must be denied.  *Eckhart* v. *Irons,* 128 Ill. 568.

The language in question will not bear the construction put upon it by plaintiffs in error.

The affidavits were admissible to show the meaning of the words, and evidence of experts is admissible to prove the meaning of the term "brick house," in an insurance policy.  *Mead* v. *Northwestern Ins. Co.,* 7 N. Y. 530.

Evidence of millers admissible as to the meaning of the word "raceway."  *Wilder* v. *De Con,* 26 Minn. 10.

Evidence of experts is admissible to show that the word "fur" includes fur skins and not merely the wool off the skins.  *Astor* v. *Union Ins. Co.,* 7 Cowen, 202.

Evidence of experts is admissible to show the meaning of the word "barrel," in a contract for the sale of oil. *Miller* v. *Stevens,* 100 Mass. 518.

Evidence of experts is admissible to show that the word "dollars," in a promise to pay, meant confederate dollars. *Thorington* v. *Smith,* 8 Wall. (U. S.) 1.

Evidence of experts is admissible to show that in a lease the word "thousand," referring to rabbits, meant 100 dozen. *Smith* v. *Wilson,* Barnw. & Ad., 728.

Evidence is admissible to show that in the phrase "the level of the bottom of a mine," the word "level," had a special and peculiar meaning, and what that meaning was. *Clayton* v. *Gregson,* 5 Adolph. & Ellis, 302.

Evidence was admitted to show the meaning of the words "mason work" in a contract.  *City of Elgin* v. *Joslyn,* 136 Ill. 525.

Evidence was admitted to show the meaning of the word "season," in a contract for the delivery of corn on river boats. *Myers* v. *Walker*, 24 Ill. 133.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

It will be observed that plaintiff in error, Mullen, was the first purchaser from Hutchinson of one of the twelve lots which Hutchinson had platted and owned. In the deed from Hutchinson to Mullen is found a covenant, that the grantor will sell the remaining lots fronting on Greenwood avenue, in said block, to parties who will cause to be erected single dwellings only on each lot of fifty feet. We think it is clear that this covenant inured to the benefit of all subsequent purchasers of the remaining eleven lots from Hutchinson, and by the terms of the covenant an easement was created in their favor as to all of the eleven lots sold, after the execution of the Mullen deed. *Allenton* v. *Levitt*, 54 N. Y. It will also be observed that the deed from Hutchinson to Parrish, conveying lots 1 and 2, the property now held by the defendants, and upon which they are erecting the structure in question, contains the following prohibition: "It is understood and agreed, as a part of the consideration expressed above, that only a single dwelling is to be constructed or placed upon each fifty-foot lot, and that no building shall be placed upon the east thirty feet of said premises," If, therefore, there has been any violation of this clause in the deed made to Parrish, by the defendants who claim under him, and who are bound by any condition in any deed in their chain of title, made to any of their grantors, the purchasers from Hutchinson, of the remaining eleven lots, may, under the claim in the Mullen deed, invoke the aid of a court in their favor.

It is insisted by the complainants that the words in the deed from Hutchinson to Parrish, "only a single dwelling," mean a dwelling house to be occupied by a single family. On the other hand, defendants claim that the words used

in the deed mean only one dwelling house, which may be used by one family or more. The question, therefore, to be determined is one of construction, pure and simple; in other words, what the contracting parties intended by the use of the words incorporated in the deed. Where real property is conveyed in fee, restrictions in the use are not favored, but where the intention of the parties is clear in the creation of restrictions or limitations upon the use of a grantee, courts will enforce the same. But as is said in *Eckhart* v. *Irons,* 128 Ill. 582: "If there is any doubt whether the restrictions were to cease then (at the end of fifteen years), or whether they were to be permanent, the existence of the doubt is to deny the existence of the ease-ment or privilege. All doubts must be resolved in favor of natural rights, and against restrictions thereon. In this country real estate is an article of commerce, the uses to which it should be devoted are constantly changing as the business of the country increases, and as its new wants are developed; hence it is contrary to the well recognized bus-iness policy of the country to tie up real estate where the fee is conveyed, with restrictions and prohibitions as to its use, and hence, in the construction of deeds containing re-strictions and prohibitions as to the use of property by a grantee, all doubts should, as a general rule, be resolved in favor of a free use of property, and against restrictions."

On the hearing, a large number of affidavits of architects, real estate men, and loaners of money on real estate, were presented by the respective parties, for the purpose of showing the meaning, in the city of Chicago, of the words contained in the deed. These affidavits were excluded by the court, and we fully concur with the Circuit Court in its decision. The words, only a single dwelling, are not words of art, nor does it appear that there is any usage or custom in Chicago under which such words have a local meaning in Chicago, and hence we are aware of no rule under which witnesses could give their opinions whether a flat could be

included within the words used or not. The intention of the parties must be determined from the language of the deed itself, considered in connection with the surrounding circumstances at the time the deed was executed. Only a single dwelling is to be constructed or placed upon each fifty-foot lot. Does the word single apply to the building, or the use which should be made of the building when constructed? The question is one which is not entirely free from doubt, but we are inclined to the opinion that the word single referred to the structure. The word single signified one building. This seems more reasonable, from the fact that Hutchinson, the grantor, in making other deeds for a part of the lots in the same subdivision, used the word one as synonymous with the word single. In the deed to Horne of lot 6, on August 6, 1890, Hutchinson provided that "the above described premises are to be used for the purpose of a private dwelling only, and that but *one* dwelling shall be placed upon said property." In conveying lot 5 to Chamberlain, on September 25, 1890, and lot 4, on October 11, 1890, the same language was used as in the deed to Horne.

We think the parties intended by the use of the words in the deed the same as if they had said in the deed only one dwelling house should be erected on each fifty-foot lot. No doubt the grantor had in mind, and desired to prohibit, the erection of several small dwellings on each fifty-foot lot; the intention being to require the erection of large structures on the property. It was also, no doubt, the intention of the grantor to require the property to be used for residence purposes. Under the clause in the deed, stores, livery stables, warehouses, houses for manufacturing purposes, could not be erected, nothing but dwelling houses. At the time this deed was executed, flats or apartment houses, where several families could reside, were common in Chicago; such buildings had been erected and were then in use within a short distance of these lots. If therefore it

was the intention to prohibit the erection of a flat on the property, why did not the parties say so in the deed, or if they intended that only a building such as is usually built for a private residence of a family, should be erected, why not say that in the deed? There can be no doubt in regard to the fact that the parties knew the difference between a flat and an ordinary dwelling house erected as a private residence, and it is unreasonable to believe that the language incorporated in the deed would have been used, if the intention was to prohibit the erection of a flat. *Gillis* v. *Bailey*, 21 N. H. 149, is a case cited and relied on by the complainants. The case is quite analogous to the one under consideration, but the deed in that case contained a recital which tended to show the intention of the parties. The recital in the New Hampshire case, among other things, contained the following:

"And, whereas, the corporation is induced to dispose of the lands in large parcels, and at prices below the true value, in order that the buildings erected thereon may not be crowded together, but may each be surrounded by space of open ground, and that for this purpose it has been agreed between the parties to these presents that only a single house, etc., shall be erected."

The court held the prohibition in the deed did not prevent the grantee from covering the whole lot with a building, but that the recitals showed that a residence for a family was intended. Here the deed contains nothing which throws any light on the language in dispute, and hence we do not regard the case as a controlling authority. We are satisfied that the decree of the Circuit Court was correct, and it will be affirmed.

*Judgment affirmed.*