Keeler, J.
In December, 1895, the Shaker Heights Land Company, by its deed, conveyed to the city for park purposes six parcels of land known as a part of the Shaker tract of Warrensville township, including Shaker lake, and containing about 95 acres. As a part of the consideration the city was to establish a park, park entrance and park driveway upon or within the parcels thus deeded, and was given the right to slope or bank the filling where required for grading; was to provide for draining the surface water, and was given certain other rights in the circumjacent land retained by the grantor, among which was that no building or structure of any kind should' be erected, placed or suffered to remain upon the lands remaining to the grantor *130 within fifty feet of the land conveyed to the city. The city has performed all the things by it agreed to be undertaken and performed; has improved and emparked the property so conveyed, has laid out therein a boulevard and parkway extending over the entire tract, and has expended upon the same a large sum of money. These restrictions become an encumbrance upon all the land remaining in the grantor or in its successors and grantees, and the purpose was to convey to the city for park purposes a strip of land of adequate width for the construction of a parkway or boulevard which, with the adjacent land, should present the appearance of a parkway.
In June, 1904, the Shaker Heights Land Company, by deed, conveyed to the defendant about eighteen acres of its remaining land, having a frontage of 2,500 feet upon the parkway constructed by the city on land conveyed to it theretofore by said company, the same being contiguous to the lands held by the city. The deed to her contained a specific reference to the restrictions and limitations contained in the deed to the city (which was a part of the original agreement between the city and the grantor), and in addition undertook to construe the restrictions in these words:
“Nothing herein contained shall be so construed as to prevent the erection by grantee anywhere on said premises of any kind of fence, hedge or stone wall for enclosing said land or any portion thereof. ’ ’
On her land the defendant has erected an expensive and beautiful dwelling-house about 200 feet back from the parkway, has emparked and beautified at great expense the land in front of and about her house, and (for the purpose of this case) is about to construct along the front line of her premises for a distance of 2,500 feet, adjacent to the parkway, a ruble stone wall of field granite boulders about three feet high, three feet thick and filled in behind with earth so as to raise and elevate the grade of the land on a level with the top of the wall.
This action is brought to enjoin the construction of said wall as thus planned and contemplated, on the ground that it will be destructive of the objects and purposes of the restrictions in *131 the various deeds, a violation of the obligations the defendant assumed as grantee, and will irreparably injure the plaintiff by destroying the value of the property conveyed to it for park purposes, as well as destroy the Shaker Heights Park held by the city under the laws of the state. Three defenses are interposed :
1st. The city had no right to purchase property outside its corporate limits. Its deed therefore of the 95 acres made in 1895 is void, and no right can be maintained in respect thereof, if the transaction by which it attempted to acquire land is void for want of power. 58 O. S., 430.
There is no doubt of the general rule that a municipal corporation can exercise its corporate powers only within the city limits without express authority of the Legislature. 20 Ency. of Law, 1148; 40 Ill., 201; 36 Mich., 474-5-7; 9 N. Y. App., 64; 9 N. Y., 74; 2 Dill., 565.
This is the doctrine in Ohio also. Except as to such powers as are essential to the very life of the corporation, the presumption is that the Legislature has granted in clear and unmistakable terms all that it has designed to grant, and all doubtful claims are resolved against the corporation. 49 O. S., 118-120; 45 O. S., 118.
In this connection it is interesting and important to note the history of the general powers with reference to parks conferred on municipalities by our Legislature. The acts of 1869, 1880, 1889 and 1890 all give to municipalities the right to hold and improve public grounds and parks and to provide for the protection and preservation of the same, to acquire by purchase or otherwise and hold real estate or any interest therein and other property for the use of the corporation, and to sell and lease the same. These rights were all practically re-enacted by the code of 1902, and were all the general powers in force at the time of the conveyance to the city in December, 1905.
No specific powers to appropriate private property outside the limits of the corporation was granted until April, 1888 (85 O. L., 178). Paragraph .10 of that act, among other things, provides ag follows;
*132 “The right to appropriate shall not be limited to lands lying within the limits of the corporation.”
This provision was re-enacted in May, 1894 (91 O. L., 214). Paragraph 10 of that act provides in addition:
‘ ‘ The council shall have the right and power to issue the bonds of said village or city in payment of the amount so fixed by the court by proceedings in condemnation as to the value of said property.”
Section 11 of Ellis ’ Municipal Code, page 85, declares:
“In the appropriation of property for any of the purposes named (i. e., for parks, etc.), the corporation may, whenever the same is reasonably necessary, acquire property outside the limits of the corporation.”
It will thus be observed that the city’s powers with respect to the appropriation and acquisition of real estate for park purposes has been gradually and greatly enlarged, the Legislature evidently realizing the necessity to the people of building parks remote from the business center and beyond the city limits. It is quite difficult for me to understand how a municipality can “appropriate and acquire” property outside its limits and yet can not purchase it. The word acquire must mean to acquire by purchase, as well as to acquire by appropriation. Is not the* power to purchase land a derivative of the power to acquire land by eminent domain? Whether the act under which the park board procured the land for park purposes is unconstitutional or not can not now, in my judgment, be inquired into. 54 O. S., 24.
I can not believe that this defense to the petition is seriously urged. If sound, it would amount to the practical destruction of almost our entire park system, upon which the city has expended a great amount of money. If the city’s title to the property acquired by it is to be destroyed, the consequences to the defendant’s property would be serious, and instead of being a gainer, she would be a loser. Besides, “it would be grossly inequitable,” in my judgment, “to permit the defendant to question the title of the city to these lands for the sole purpose of enabling^ her to escape the burden involved in a violation of *133 her own covenants, voluntarily assumed with full notice of the public’s rights.”
2d. The facts are not sufficient to warrant an injunction.
The defendant relies upon the well established principles underlying the writ, that there must be no doubt in the case, that the right must be clear and unexceptionable, that the substantial rights of the parties are not affected, that the injury is doubtful and contingent, that the relief sought is disproportionate to the nature and extent of the injury sustained, that an injunction may be disallowed though there be a damage, that no threatened irreparable injury appears, that an injunction under the facts would "be unconscionable, that the plaintiff’s right is not clearly apprehended, that the wall is of no greater dimensions than is reasonably necessary for the proper enclosure of her premises, and the reasonable protection of her premises which she is obliged to maintain, that the city has an adequate remedy at law, and that defendant is amply able to respond in damages to any amount that might be assessed against her.
The beauty of the wall and the adjacant grounds are conceded. By the casual or perhaps critical observer they would be regarded as a positive acquisition to the parkway and the park system of the city. Standing alone and by itself, the removal or prevention of the wall might well be deemed disproportionate to the injury, and its beauty and grace might well appeal to the conscience of the court. But we must not lose sight of the purpose of the restrictive covenant. It was to convey to the city for a parkway a strip of land of certain' uniform width, not for 2,500 feet only but for the entire distance, so that, among other things, the beauty and symmetry of the whole could be preserved, and that the strip should have the appearance of being a part of the park, and be left without any structure of any kind. The restriction was intended primarily, not for' the benefit of adjacent property holders, but for the benefit of the city and its park system, and the defendant must be held to have had knowledge of that purpose when she purchased the land, which she has since beautified by a handsome residence, graceful walks and drives and artistic settings of flowers, shrubbery, lawns and trees. The claim that the wall is a pro *134 tection is more fanciful than real. Besides, that privilege is accorded her by the restriction on a line fifty feet back from the present location of the wall. As for the space in front, she will not be denied the right to beautify the 'same in any manner she may chose, not in violation of the covenant.
As for the claim that the. city has an adequate remedy at law, and that the defendant can respond in damages,.this ease appeals to that branch of equitable jurisdiction which protects restrictions where the legal remedy would fail to accomplish the purpose of the covenant itself. It is not based upon the inadequacy of legal remedies. It is difficult to see how the damage could be measured in money. The right to the people of the city as a whole or individually to have a driveway of uniform adequate width blending with adjoining property in a general unrestricted landscape effect, can not be measured by any standard of commercial value.
Any grantee may have the benefit of enforcing a covenant as against another grantee where the restrictive covenants are for their mutual benefit, and where the injury to the owners’ rights are not susceptible of adequate compensation.
“The purpose for which the covenant was made,” says the Supreme Court, 62 O. S., 49, “is not left to conjecture, but is defined by its terms 'to be increasing the beauty of said avenue, ’ ’ etc. “Having defined the purpose of the covenant, the court sustains the power of equity to protect that purpose.” Also, 1 High, 69.1; 145 Ill., 336; 54 N. Y., 35.
The final and probably leading argument of the defendant is that the wall is not a “building or structure” within the meaning of the restrictive covenant; and even if it is, it extends, beautifies'and artistically enhances the landscape. It therefore magnifies the park scheme and can not equitably be found to be a breach of the conditions, in plaintiff’s deed. Restrictions, being repugnant to the law, the free use of property, it is also urged, should be favored, unless the intention of the parties is clear. The intention of the original grantor and the city is manifest from the deed itself, and that intention was recognized by the defendant when it was undertaken to construe or limit *135 the restriction in grantor’s deed to her, and it is not a sufficient answer to say that the immediate landscape is enhanced in beauty. That would be quite as true if the wall were placed where the restriction contemplated, or even if it were eliminated entirely. A hundred and forty foot boulevard contracted at different points fifty feet or more would -be quite as obnoxious to the critical or casual eye as an artistic stone wall would in itself be beautiful.
As to whether the wall is a “structure” or not we are not helped very much by the decisions. What would be a structure under one state of facts might not be a structure under another. A spite fence has been held to be a structure while a railroad has been held not to be (59 O. S., 179; 105 Mass., 515). We must construe the word with reference to the object sought by the restriction, which was, among other things, that in consideration of the city’s expending $150,000 for park purposes, the original grantor and subsequent purchasers would preserve to the city all its rights with reference to its parkways. Defendant has cited a number of English decisions holding,-, in one instance, that whether a wall was a structure or not was -a question of degree; that a wall three feet high was not, while one eleven feet high was. “But,” says the court, “that section [referring to the ordinance] must be construed reasonably and with reference to the object for which it was passed.”
Rigby, L. J., says further:
“If a man has a dwarf wall around a garden or something of that kind outside the general building line, if that be the mere means of marking off his property to keep it private and not substantially interfering with the general line of the building, that may well be outside Section 75, but if he builds a great wall, which is an interference with the uniformity of the street, that is as objectionable as an actual building for the purpose of habitation or irse. ’ ’
Coleridge, C. J.:
“Every possible building structure or erection * * * is not necessarily within Section 75. Such a wall as this, however (seven and eight-twelfths feet high), is within the section.”
Judgment for plaintiff.
Baker, Wilcox, Wilkins, Stevens & Carey, City Solicitors, for plaintiff.
C. W. Fuller, for defendant.
Cove, J.:
“'Whether a boundary wall comes within the section is a question of degree and of intention.”
These decisions as well as definitions of the word as found in the reports are based upon some statute or ordinance interpreted with reference to some special legislative purpose, and are in harmony with what T have just stated, that to ascertain its true meaning we must revert to the purpose of the restrictive covenant. That principle is evidently not lost sight of in the English cases cited.
There is also no little in the argument of plaintiff that if defendant can maintain a wall three feet high, she can* maintain one much higher. If it is not a structure now it would not be then, keeping in mind the basis of our interpretation. If she can maintain this wall or one higher, so can her neighbors and all subsequent-holders, and the entire purpose of the restriction be thwarted and defeated. It is no answer to say that neither she nor subsequent holders, for their own personal convenience and pleasure, would do so.
It was to prevent such a possibility that the restriction, among other things, was inserted.