LESTER A. KESSLER et al., Plaintiff-Appellants, v. DOMINIC PALMERI, et al., Defendants-Appellees.

(No. 71-36; )

Third District—February 15, 1972.

T. Donald Henson, of La Salle, for appellants.

Robert J. Sinon, of Ottawa and John P. Turner, of Chicago, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The owners of a tract of land in Mendota, Illinois, executed a plat of a subdivision known as Waldorf's Fifth Addition to the city of Mendota. After requisite approval was obtained this plat was recorded on June 12, 1964.

The plat contains certain restrictions governing the use of the property in the subdivision and these restrictions were designated as "protective covenants." The most pertinent portion of the covenants is their preamble and covenant number 1, which is as follows:

"The following protective covenants regulating the use of the property shown hereon are hereby subscribed to without reservation:

1. No lot shall be used for other than residential purposes except the south 220 feet of the subdivision."

The remaining eighteen covenants provide for approval of building plans, minimum floor areas, building lines, utility easements and other restrictions which we shall refer to as they become pertinent to the determination of the issue presented in this appeal.

In 1958 the city of Mendota had adopted a zoning ordinance and the premises later to be known as the south 220 feet of Waldorf's Fifth Addition to the City of Mendota was zoned B-1—Local Business District. Uses permitted in this district or classification included but were not limited to clothes pressing establishments, food stores, self-service launderies, shoe and hat repair stores, undertaking establishments, funeral parlors, dwelling units and lodging rooms provided they were above the first floor level. Any business signs were to be non-flashing and there was a prohibition against them projecting higher than sixteen feet above the curb level.

It is significant to note that the south 220 feet of the subdivision embraced all of lot 11, the greater portion of lot 10 of the subdivision, as well as all of lot 12 and the greater portion of lot 13; however, lot 12 and the greater portion of lot 13 referred to lie west of the land which became subject to the controversy which resulted in this appeal.

The plaintiffs-appellants, hereinafter referred to as the "property owners", are assignees or successors in interest to the original owners and platters of the subdivision. On April 30, 1967, the defendant-appellee Dominic Palmeri owned lots 9, 10 and 11 in the subdivision and on that date he gave to the defendant-appellee Housing Authority for LaSalle County, Illinois, hereinafter referred to as the "Housing Authority", an option to purchase the lots. All of lot 11 and most of lot 10 are within the south 220 feet of the subdivision. The north 17.45 feet of lot 10 and all of lot 9 lie north of the south 220 feet. At the time the option was granted all of the lots north of the south 220 feet of the subdivision except for one or two vacant lots were improved with single family

dwellings. Within the south 220 feet and just west of lots numbered 10 and 11 a two story brick colonial style apartment building consisting of twelve units had been erected.

By a deed dated October 21, 1970, the defendant-appellee Palmeri conveyed lots 9, 10 and 11 in the subdivision to the Housing Authority.

Washington Street, which is also U.S. Route 34, borders the property of the Housing Authority on the south. Immediately east of the Housing Authority's property adjoining Waldorf's Fifth Addition, is a medical clinic and on the south side of Washington Street, being across the street from the Housing Authority's property, is a plumbing and heating establishment, two car agencies, and the Wayside Press, a printing firm.

After the Housing Authority received its option to purchase lots 9, 10 and 11 from Palmeri, it was announced that there was to be constructed on the property a six story, sixty unit high rise apartment for rental to elderly people with low incomes. The property owners filed suit in the circuit court of La Salle County asking for a declaratory judgment that the construction of the high rise project would breach certain restrictive covenants contained in the plat of the subdivision. The Housing Authority denied the allegations in the complaint and responded with a counterclaim for an order finding that the construction would not violate the protective covenants since construction would be within the south 220 feet and the covenants were inapplicable to that portion of the subdivision. A hearing was had and the trial court entered an order finding and declaring that the protective covenants contained in the plat of the subdivision do not apply to the south 220 feet and if the Housing Authority does erect the building within such area none of the covenants would be breached. It is from this ruling that the property owners appeal.

■■ The sole issue presented for review is whether the court erred as a matter of law in finding and declaring that the covenants contained in the plat do not apply to that property in the subdivision upon which the apartment building is to be constructed. The determination as to whether the covenants contained in the plat of the subdivision are to apply to the south 220 feet upon which the Housing Authority intends to construct a high rise apartment presents solely a question of law, since such determination necessarily involves a construction of the covenants. See *Barry v. Chicago, I. & St. L. S. L. Ry. Co.*, 156 Ill. App. 9.

■■■ The paramount rule for the interpretation of covenants is to so expound them as to give effect to the actual intent of the parties as of the time the covenant was made and as collected from the whole document construed in connection with the circumstances surrounding its exeution. (21 C.J.S., Covenants, Sec. 20, p. 896; *Barry v. Chicago, I. & St. L. S. L. R. Co., supra*). Each case must be decided on its own facts and cove-

nants should be construed most strongly against the covenantor and all doubts and ambiguities should be resolved in favor of natural rights and against restrictions. 14 I.L.P., Covenants, Sec. 3, p. 424-425; *Hutchinson v. Ulrich*, 145 Ill. 336, 34 N.E. 556; *Leverich v. Roy*, 338 Ill.App. 248, 87 N.E.2d 226; *Staley v. Mears*, 13 Ill.App.2d 451, 142 N.E.2d 835.

Recognizing the foregoing long accepted rules of construction and interpretation of covenants, it now devolves upon us to apply them to the facts and circumstances in the case before us.

That the south 220 feet of the subdivision can be used for other than residential purposes is acknowledged by the property owners, but it is their contention that if the use be commercial for a high rise apartment building such as is contemplated then all restrictions referred to as protective covenants shall apply to and govern the selected use.

The issue in this case pivots on the determination as to whether the property owners' contention is clear, unambiguous and free from doubt when one reads and examines the covenants contained in the plat, taking into consideration the circumstances in existence at the time the covenants were drafted and made a part of the plat.

■■ We agree with the property owners that the preamble to the covenants should be resorted to in an effort to determine the intent of the subdividers. (See *Guhl v. Guhl*, 376 Ill. 100, 33 N.E.2d 185.) The preamble to the covenants states that they shall regulate the use of the property shown hereon (referring to the lots appearing in the plat) without reservation. The property owners strongly urge that the phrases "property shown hereon" and "without reservation" make the language clear, unambiguous and subject to but one construction or interpretation. With this contention we agree as far as the preamble standing alone is concerned. If we had only to determine the intent of the subdividers based upon the language contained in the preamble then we could conclude that no ambiguity existed and hence there was no room or need for construction. (20 Am.Jur.2d, Covenants, Sec. 185, p. 752.) We are not permitted, however, to consider only a portion of the covenants, since all of them, including the preamble, must be considered and in doing so we are immediately faced with covenant number 1, which states that "No lot shall be used for other than residential purposes except the south 220 feet of the subdivision." With the inclusion of this covenant it is apparent to us that a patent ambiguity exists which requires a determination as to whether it was the intent of the subdividers that the remaining eighteen covenants are to apply to all uses made of the property set forth on the plat, whether it be residential or otherwise.

■■■ Following the rule that the intent of the subdividers may be determined by an examination of circumstances existing at the time the

plat and covenants contained thereon were executed, we find that the entire subdivision consisted of two distinct kinds of property. The south 220 feet has a frontage on Washington Street, which is also U.S. Route 34. This route carried considerable traffic and across the highway from the south 220 feet of the subdivision various businesses were located. Immediately east of and adjacent to this tract known as the south 220 feet were located various businesses and professional offices. By its very location and as the result of the traffic which traveled by one of its boundaries the south 220 feet of the subdivision was suited for commercial use and in fact the city of Mendota had previously zoned this tract of land for business purposes. Had the subdividers so desired they could have restricted the south 220 feet to a residential area and such restriction would have controlled notwithstanding the B-1 (business) zoning ordinance. In *Bluett v. County of Cook,* 19 Ill.App.2d 172, 153 N.E.2d 305, the court stated that when restrictive covenants were more restrictive than the zoning requirements, the restrictive covenants would control. The record discloses that the remaining property lying north of the south 220 feet was suitable and zoned for single family residences.

As our Supreme Court stated in *Eckhart v. Irons,* 128 Ill. 568, 20 N.E. 687, "In this country, real estate is an article of commerce." It would be illogical to assume that the subdividers were not motivated by a desire to market their property at a most advantageous price. Covenant number 1 indicated that the south 220 feet could best be marketed as commercial property while the remaining lots lying north would have the greatest appeal as single family residences. This is the only sound conclusion that can be reached when one reviews the covenants in their entirety and also examines the evidence pertaining to traffic flow, preexisting businesses, professional offices, and a zoning ordinance which permitted a business use of the property in question.

■■ Considering all of these matters in their entirety we find it illogical to assume that the subdividers authorized a commercial or business use for a sizeable portion of the subdivision but intended that such use was to be restricted by covenants which normally and customarily pertain to residential use.

We are aware of the fact that the property owners take issue with the contention that covenants 2 through 18 are primarily applicable to residential use so we find it necessary to analyze at least a portion of these covenants. Covenant number 3 regulates the minimum square feet of a dwelling structure and requires that garages be attached to such structure and further specifically provides that no detached garages shall be permitted. We are first impressed with the fact that the covenant specifically refers to a "dwelling structure", a term not synonymous with a business

establishment. Further, the attachment of garages to business buildings, while not a complete rarity, is not the usual and customary practice.

Covenant number 6 provides that no occupancy shall be allowed until a full concrete or crushed rock drive is completed, said drive to conform to the size of the house and garage. We find it impossible to reconcile the application of this requirement to the normal and customary business or commercial structures.

Covenant number 12 provides that no sign of any kind shall be displayed to the public view on any lot, except one professional sign of not more than one square foot. It is clear to us that only one sign per lot would be permitted and it could not have an overall area in excess of one square foot. Were this restriction applied to business or commercial property having any significant number of partners or associates it would be impossible to effectively inform the public through the use of a sign as to the names of such individuals. Being bordered on one side by a highway which carries considerable traffic and being located in an area where commercial establishments are already in existence, we cannot conclude that it was the intention of the subdividers that the sign restriction was to be applicable to property used for business or commercial purposes.

■■ The property owners urge most strongly that covenants numbered 2 through 18 are applicable to the south 220 feet since covenants numbered 4 and 9 provide for building lines and location of utility easements and that the plat shows on its face such building lines and utility easements on the south 220 feet as well as the remainder of the subdivision. The trial court did not rule that the building lines and utility easements could be ignored by the Housing Authority, but did conclude that the showing of the building lines and easements on the plat itself was sufficient to encumber or restrict the property for such purposes without mentioning the same in the language of the covenants. The trial court's ruling correctly reflects the law in our state in regard to building lines appearing on the plat itself, for in the case of *Simpson v. Mikkelsen,* 196 Ill. 575, 63 N.E. 1036, our Supreme Court held that building set back lines on a plat were sufficient to establish such building lines and that further amplification by collateral writing was not necessary. In the instant case the plat itself, independent of the language contained in covenants 4 and 9, was effective to establish the building lines and utility easements and therefore we cannot agree with the contention of the property owners that these two covenants evidenced an intent on the part of the subdividers that the use of the south 220 feet was to be subject to the restrictions contained in covenants numbered 2 through 18.

We deem a further analysis of the protective covenants unnecessary,

908

for to us it is quite evident that they are inapplicable to the south 220 feet of the subdivision which the subdividers intended to be used for business or commercial property. The inconsistency of attempting to apply restrictions designed to govern the use of residential property to property intended to be used for commercial purposes created an ambiguity. It is an ambiguity which renders applicable the rule of strict construction favoring the free use of property. See *Hutchinson v. Ulrich, supra; Postal Telegraph Cable Co. v. Western Union Tel. Co.*, 155 Ill. 335, 40 N.E. 587; *Brandenburg v. Country Club Building Corp.*, 332 Ill. 136, 163 N.E. 440.

For the reasons set forth we conclude that the order of the circuit court of La Salle County should be affirmed.

Order affirmed.

STOUDER, P. J., and ALLOY, J., concur.