THE KNOLLS ASSOCIATION, Plaintiff-Appellee, *v.* JACK D. HINTON *et al.*, Defendants-Appellants.

Third District   No. 78-321

Opinion filed May 9, 1979.

Glenn E. Benckendorf, of Peoria, for appellants.

Wayne L. Hanold and Daniel L. Johns, both of Westervelt, Johnson, Nicoll & Keller, of Peoria, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

"The Knolls" subdivision is a residential subdivision located within the corporate limits of the city of Peoria containing approximately 250 homes ranging in market value from $70,000 to $140,000. All lots are improved. The subdivision is bordered on three sides by public roadways; on the west by Sheridan Road, on the south by War Memorial Drive, and on the east by Knoxville Avenue. The Knolls is bordered immediately to the north by a separate residential subdivision known as Knollcrest.

"The Knolls Association" is an association incorporated under the General Not-for-Profit Corporation Act and formed pursuant to a declaration of restrictions for The Knolls subdivision dated July 9, 1928, and recorded in the office of the Peoria County Recorder. The Knolls Association is the plaintiff in this action. Jack D. Hinton and Anna L. Hinton are owners of the property at 114 West Stratford Drive, which is located within The Knolls. Lincoln National Realty, Inc., conducts business from a commercial building located at 114 West Stratford Drive. The Hintons and Lincoln National Realty, Inc., are the defendants in this cause.

Plaintiff brings this action seeking to enjoin the defendants from maintaining advertising signs presently located on the exterior of the south and east wall of the commercial building located at 114 West Stratford Drive. The signs allegedly violate restrictive covenants affecting

property in The Knolls subdivision. The Circuit Court of Peoria County found that the signs described in plaintiff's complaint were in violation of the declaration of restrictions for The Knolls. That court also found that no substantial change in the character and environment of the area had occurred such that enforcement of the restrictions would be inequitable, nor had the plaintiff association waived or abandoned the restrictions by inaction and failure to enforce. Based upon these findings the circuit court entered an order on July 28, 1978, perpetually restraining and enjoining the defendants from maintaining the signs located on the exterior of the south and east wall of the commercial building located at 114 West Stratford Drive. That order was stayed pending appeal to this court.

The declaration of restrictions for The Knolls contains several pertinent passages which must be set forth verbatim for a complete understanding of the discussion which follows:

"3. The word 'Lot' may mean any lot as platted, or any tract or tracts of land as conveyed, which may consist of one or more lots or a part or parts of one or more lots as platted and upon which a residence may be erected in accordance with the restrictions hereinafter set forth (except as provided in Section XIV Article One for Business Lots) or as set forth in individual deeds * * *.

* * *

Section II, Billboards:

During the period or periods of time that the restrictions herein set forth shall be effective, the construction or maintenance of billboards or structures exceeding five (5) square feet in size for posting, painting, or printing of signs or advertisements on any of the land in this Subdivision, including streets or roads or public places, is hereby prohibited * * *.

* * *

Section XIV. Business Lots:

All of Block One (1) and all of Block Two (2), except lots Nineteen (19), Twenty (20), and Twenty-one (21), are business, or semi-business, and not bound by the restrictions herein for residence lots except as follows:

* * * 5. A building or buildings not to exceed two (2) full stories above ground fronting the North, and three (3) stories above the ground fronting the South, the ground floor of which shall be used for stores with entrance fronting South and with no windows, doors, passages, or other openings therefrom to the North, may be erected to Lots Six (6), Seven (7), or Eight (8), in Block Two (2). Stories above the ground are to be used as residences with entrances from the North, and the North front of such building or buildings is to be

of residential architecture without commercial aspect, nor shall any commercial display or signs appear on the North side of such buildings. All of said lots shall be under the same restrictions and control for residences as they may apply."

The restrictions as excerpted are central to the issues in this dispute.

■■ On appeal, the defendant presses three alternative theories. On the one hand he argues that the advertising signs in question do not violate the restrictive covenants of the subdivision. This issue is first raised in defendant's reply brief on appeal. We believe that the new issue raised in defendant's reply brief should be treated as waived, however, because of the importance of the substantive issue of law involved here we have elected to decide the question of whether the advertising signs violate the restrictive covenants of the subdivision. In that brief the attention of this court is directed to the case of *Kessler v. Palmeri* (1972), 3 Ill. App. 3d 901, 278 N.E.2d 813. That case held that where the intent of subdividers is ambiguous regarding the application to commercial property of restrictive covenants designed to govern the use of residential property, then such ambiguity must be resolved with a construction favoring the free use of property. The case has no application to the facts before us, inasmuch as the restrictive covenants before us exhibit no such ambiguity. The covenant which limits the size of signs or advertisements to five square feet applies to "any of the land" in The Knolls. The restriction does not apply solely to "lots" or solely to "residential lots." Even if the above referenced covenant can be construed as limited to residential lots, the intent of the subdividers is unequivocal that Lots 7 and 8 in Block 2 are "under the same restrictions and control for residences as they may apply."

The subdividers of The Knolls provided an additional restriction with regard to business lots 7 and 8 in Block 2. It is provided that any structure erected on those lots may be used for commercial purposes and the entrance must front on the south. Also within the permissible scope of the restrictive covenants is the residential use of the second and third floor of structures located on those Lots 7 and 8. It is further provided that the entrance for the residential second and third floors must front on the north of such structures. In keeping with this residential-commercial dichotomy which the covenant establishes between the north and the south front of the building, no commercial display or signs of any type are allowed on the north front. There is no inference in the covenant that this north side prohibition is in lieu of the dimensional restrictions earlier provided for. To draw such an inference would be in disregard of well-established rules of construction. In construing these covenants and determining the intention of the subdividers, the instrument must be read and considered as a whole. (*Keep Productions, Inc. v. Arlington Park Towers Hotel Corp.*

(1977), 49 Ill. App. 3d 258, 364 N.E.2d 939.) Examination of the whole instrument evidences an overriding concern on the part of the subdividers to establish a tranquil and aesthetically pleasing atmosphere for residential life. Where commercial activity is provided for, it is circumscribed. And where, as here, residential and commercial activity are mixed together in the same structure on the same lot, additional and supplemental limits are placed upon the commercial activity. Such additional and supplemental protections are consistent with the subdivider's scheme as a whole. What is more, the subdividers provided that all other restrictions should apply to these residential lots. Meaning and effect must be given to every part of this instrument. (*Heifner v. Board of Education* (1975), 32 Ill. App. 3d 83, 335 N.E.2d 600.) Only if we hold that the north side prohibition is additional to rather than in lieu of the dimensional restriction is it possible to give meaning to the last sentence in the covenant number as Section XIV, Subsection 5. The conclusion to be drawn from this reasoning is that, according to the covenants for The Knolls, no signs or advertising are permitted on the north side of buildings constructed on Lots 7 and 8 in Block 2, and no signs or advertising in excess of 5 square feet are permitted on the east, south, and west sides of such buildings.

■ Defendant's second alternative theory is that plaintiff waived any right to object to the offending signs on the east and south sides of defendant's building as a result of long-time acquiescence in a sign on the north side of that building. If plaintiff's conduct is waiver by nonaction, such waiver applies only to the covenant prohibiting any signs on the north side. There has been no waiver of the covenant prohibiting signs in excess of 5 square feet on the south and east and west. An additional refutation of defendant's argument lies in the cases he himself has cited. In each instance (*Watts v. Fritz* (1963), 29 Ill. 2d 517, 194 N.E.2d 276; *Rushing v. Camp* (1974), 19 Ill. App. 3d 435, 311 N.E.2d 757; *Wallace v. Hoffman* (1949), 336 Ill. App. 545, 84 N.E.2d 654), the court concluded that waiver had occurred only after there had been acquiescence in multiple violations of the covenant. In the case at bar only a single violation, a sign on the north side of the building, has been demonstrated. Furthermore, minor violations of a restriction will not prohibit the subsequent enforcement of it. (*Punzak v. DeLano* (1957), 11 Ill. 2d 117, 142 N.E.2d 64; *Watts v. Fritz.*) The record shows that the advertising sign which previously existed on the north side of the building was tasteful and in keeping with the residential character of the neighborhood. The new and offending signs on the south and east side of the structure are 32 feet of yellow neon lights. The trial court did not err under these circumstances in concluding that a single minor violation did not constitute waiver.

■■ Defendant's final alternative theory is that a substantial change in the

neighborhood occurred subsequent to the filing of the restrictive covenants in 1928. In fact, the evidence in the record is that The Knolls subdivision has remained substantially unchanged since its inception. There is considerable evidence that the areas outside the perimeter of The Knolls subdivision have undergone changes in the intervening period. A paragraph from American Jurisprudence which was cited approvingly in *Exchange National Bank v. City of Des Plaines* (1975), 32 Ill. App. 3d 722, 734, 336 N.E.2d 8, is instructive:

> "Changed conditions outside the restricted area must not be permitted to terminate the restrictions where this would cause property owners within the restricted area to suffer damage. Where no radical change in a restricted residential tract has been shown, the fact that apart from and surrounding the tract some business has grown up, and that the land has become more valuable in consequence, does not relieve the lots in the restricted district from the restrictions." (20 Am. Jur. 2d *Covenants* §284 (1965).)

While defendant's authority restates the general rule that restrictive covenants will not be enforced where the character of the neighborhood has substantially changed, there is no evidence in the record before us that the residential character of The Knolls subdivision has substantially changed. Neither do we find any evidence that it would be unreasonable or oppressive to continue to enforce the restrictive covenants which provide for a residential atmosphere in this subdivision. It cannot be said that the trial court decision was against the manifest weight of the evidence.

Taken with this appeal was a motion by plaintiff to strike defendant's reply brief. Inasmuch as we have considered the issues raised in that reply brief, and resolved those issues in plaintiff's favor, we deem the motion and the relief therein required as moot. No further discussion or decision is required. For the above reasons, and after careful consideration of the oral and written arguments of counsel as well as the record from the circuit court, we affirm the decision reached below and lift the stay of enforcement previously ordered. Judgment of the circuit court of Peoria County is hereby affirmed.

Affirmed.

STOUDER, P. J., and STENGEL, J., concur.