LAWRENCE E. ENGLER *et al.*, Plaintiffs-Appellants, *v.* HARRY E. TENHAAF *et al.*, Defendants-Appellees.

Third District   No. 78-351

Opinion filed August 16, 1979.

Michael E. Massie, of Massie and Steele, of Galva, for appellants.

Marjorie L. Schneider, of Galesburg, for appellees.

Mr. JUSTICE ALLOY delivered the opinion of the court:

This is an appeal from an order of the Circuit Court of Knox County dismissing the complaint of plaintiffs for a temporary injunction to prevent defendants from building a house, which plaintiffs alleged would be violative of a restrictive covenant.

On August 5, 1977, plaintiffs Lawrence E. and Lou Ann Engler, and certain other plaintiffs, all residents of the Westview Subdivision in Henderson Township, Knox County, filed an action against defendants Harry E. Tenhaaf, Edna R. Tenhaaf and Douglas W. Tenhaaf, seeking to enjoin defendants from building a house, which plaintiffs alleged would not have 2,000 square feet of habitable floor area, as required by a restrictive covenant. Plaintiffs also sought a temporary injunction to prevent defendants from working on the house during the pendency of the action. Defendants filed two motions to dismiss the action.

The trial court held evidentiary hearings which were heard on three separate days. Following the hearings, the circuit judge presiding, entered an order dismissing plaintiffs' complaint with prejudice.

On appeal in this case, plaintiffs contend that the term "basement" as contained in the restrictive covenant, would include a finished family room, which is partly, but *less* than 50 percent, below grade of the land where it is constructed.

Defendants are the owners of Lot 16 in Westview Subdivision referred to. The lot was subject to the following restrictive covenant:

> "DWELLING SIZE. No dwelling shall be permitted on Lots 1 through 13 inclusive, the habital [*sic*] floor area of which, exclusive of basements, porches, patios, and garages, is less than 1,200 square feet, or less than 2,000 square feet for all other lots."

Defendants' lot, being a lot other than Lots 1 through 13, was subject to the requirement that a dwelling built on it should have 2,000 square feet of habitable floor area.

The house which defendants built contains 1,448 square feet of habitable floor area on the upper level and 784 square feet of habitable floor area in a family room on the lower level, for a total of 2,232 square feet of habitable floor area. Plaintiffs, however, contend that the lower-level family room, which is *less* than 50 percent below grade, is a "basement" and that consequently the restrictive covenant requiring a 2,000-square-foot habitable floor area, exclusive of basements, was being violated.

From the record it appears that defendant Douglas Tenhaaf applied for a permit to build a single-family residence on Lot 16 in October 1976. In the application defendant had stated he was planning to build a single-family residence with a full basement. However, defendant testified he did not build the house from the plans he had submitted with his application for a construction permit. Those plans had called for a trilevel house and the plans from which defendant actually built the house called for a ranch-style house. Dale Ralston, manager of Alexander Lumber Co., testified that he drew the plans from which defendant built his house and that the house plans called a portion of the lower level of the house a "family room."

It was also shown that Klaus Hemmer, who owned a lot across from defendants' Lot 16, asked defendant Douglas Tenhaaf about compliance with the restrictive covenant. At the time of the conversation, which occurred on defendants' lot, footings were being dug or poured for the house. Hemmer testified that he asked defendant how big the house was going to be and defendant said it was going to be big enough. Hemmer then asked how big that was and defendant assertedly replied 1800 square feet. Hemmer testified that he told defendant that wasn't big enough because the covenant required 2,000 square feet. Defendant then threw the blueprints at Hemmer, according to Hemmer, and told him to check for himself. Defendant, who was called for a section 60 examination, stated that he didn't care about Hemmer or the restrictive covenants.

Later, Tenhaaf, under direct examination, stated that the conversation between Hemmer and Tenhaaf took place at 5:30 p.m. when defendant was pressed for time and was in the process of working on the footings of the house. Defendant testified that Hemmer had asked if the house had 2,000 square feet and defendant replied that it did, offering to show Hemmer the plans. Hemmer then looked briefly at the plans and said he still didn't believe the house would have 2,000 square feet. Defendant stated the conversation lasted for only a few minutes.

Another witness, Dan Stevens, owner of a lot across from defendants' lot, testified that he asked Tenhaaf if he was aware of the covenant requiring a certain amount of square footage and defendant's reply was "* * * what do you want me to do about it now?" Stevens replied that he

wanted defendant to bring the house up to specifications. Defendant testified that this conversation took place in the summer of 1977, at which time he was in the process of putting a roof on the house.

It was also shown of record that the home of a Paul D. Keser, on Lot 15, immediately adjacent to defendant's home, has only 1,653.7 square feet of habitable living area. By the time appellee's brief was filed in the instant cause, defendant's house had been completed and was lived in.

The following definitions of "basement" were admitted into evidence, presumably as aids to the trial court in the case:

> 1. From the City Code of Galesburg:
> "Basement shall mean a portion of a building located partly underground, but having *less* than half its clear floor-to-ceiling height below the average grade of the adjoining ground."
> 2. From the Knox County Zoning Ordinance:
> "*Basement*. A story housing part but not more than one-half of its height below grade * * *."
> 3. From Webster's Third New International Dictionary (1961):
> "The part of a building that is wholly or partly below ground level; esp: such a room having overlaid or hard-surface flooring and housing a furnace—compare cellar * * *."
> 4. Federal Housing Administration:
> "Basement: A space of full story height below the first floor which is not designed or used primarily for year-round living accommodations. Space, partly below grade, which is designed and finished as habitable space is not defined as basement space. See first story."
> "First story (first floor): The lowermost story has at least half its total floor area designed for and finished as living accommodations. For the purpose of determining this area, the area of halls, closets, and stairs is included. The area of storage, utility or heating rooms or spaces is not included. The location of the first story as defined herein is based upon the use of the space rather than on the location of the entrance doors or the finished grade."

Harold Turley, called by plaintiffs as an expert witness, defines a basement as "the lowest story of a building partially or wholly below ground." Fred Brown, a realtor for over 10 years and the past president of the Galesburg Board of Realtors, testified that the lower level of defendant's house would be more than 50 per cent above grade after the grading was finished and that in his opinion the lower level of the house was not a basement.

■■ In determining the issue which was involved in the instant case, we are mindful that two basic principles are to be considered with respect to

restrictive covenants. Those principles are to the effect that the covenants are to be construed according to the intent of the parties and, likewise, to be construed in favor of full and unlimited use of the property.

■ In *Kessler v. Palmeri* (1972), 3 Ill. App. 3d 901, 904, 278 N.E.2d 813, 816, we stated that:

> "The paramount rule for the interpretation of covenants is to so expound them as to give effect to the actual intent of parties as of time the covenant was made and as collected from the whole document construed in connection with circumstances surrounding its execution."

■■ While there is no evidence in the instant case as to what the intent of the parties was at the time of the adoption of the covenant, it can clearly be inferred that the parties intended the term "basement" to take on a meaning it would normally take in real estate usage. The evidence in the instant case on the meaning of the term "basement" in real estate usage was conflicting, but it is clear that the reasonable and logical interpretation could closely approximate that which was noted by the Federal Housing Administration, where "basement" is defined as a space below the first floor which is *not* designed or used primarily for year-round living accommodations. The FHA interpretation specified that space partly below grade, which is designed and finished as habitable space, is *not* a "basement." We do not believe that the definitions provided in the City Code of Galesburg or the Knox County Zoning Ordinance are sound and that there apparently was some misconception in the draftsmanship since it would define a "basement" as a story having only one foot of its height below grade while the room which has more than one-half of its height below grade would not be a basement. It is clear that under the Federal Housing Administration suggested definition, that the room in question is a family room and not a "basement."

The action of the trial court in dismissing the complaint and thereby holding that defendants had not violated the restrictive covenant is supported in the record by the Federal Housing Administration interpretation, or by a determination that there was an ambiguity in what the term "basement" meant, thereby authorizing a construction of the covenant in favor of the defendant and as against the person seeking to enforce the covenant, and in favor of what has been described as "natural rights and against restrictions."

■ We stated in *Kessler* (3 Ill. App. 3d 901, 904-05, 278 N.E.2d 813, 816):

> "Each case must be decided on its own facts and covenants should be construed most strongly against the covenantor and all doubts and ambiguities should be resolved in favor of natural rights and against restrictions. 14 I.L.P., Covenants, Sec. 3, p. 424-425; *Hutchinson v. Ulrich*, 145 Ill. 336, 34 N.E. 556; *Leverich v. Roy*, 338

Ill. App. 248, 87 N.E.2d 226; *Staley v. Mears*, 13 Ill. App. 2d 451, 142 N.E.2d 835."

We conclude that the trial court, under the facts in the instant case, resolved in favor of "natural rights and against restrictions" or properly interpreted the term "basement" in deciding that the room built by the defendants was not a basement, as noted by the president of the Galesburg Board of Realtors. The trial court clearly acted in accordance with precedents in construing the provision, as it did, and in granting the motion to dismiss the plaintiffs' complaint.

In view of our determination of this cause, we did not deem it necessary to determine the issue raised by the defendants that plaintiffs' action should be dismissed by reason of dilatory actions in the filing of the plaintiffs' brief. For the reasons stated, therefore, the judgment of the Circuit Court of Knox County is affirmed.

Affirmed.

STENGEL and BARRY, JJ., concur.