GARDEN QUARTER I ASSOCIATION, Plaintiff-Appellant, *v.* GLORIA F. THOREN, Defendant-Appellee.

Second District   No. 78-438

Opinion filed September 7, 1979.

Steven P. Bloomberg, of Moss and Bloomberg, of Wood Dale, for appellant.

Geister, Schnell, Richards & Brown, of Elgin, for appellee.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

Plaintiff, Garden Quarter I Association, sought injunctive relief against defendant, Gloria Thoren. The trial court granted defendant's motion for summary judgment, and plaintiff appeals.

Plaintiff is a not-for-profit Illinois corporation whose purpose is to provide for the maintenance, preservation and architectural control of the residential lots and common areas in a subdivision known as Garden Quarter. The residents of this development constitute the entire membership of plaintiff. Defendant is the owner in fee simple of a lot within the subdivision. Defendant's lot as well as all the other lots in the subdivision are subject to a recorded declaration of covenants, conditions and restrictions. Pertinent to the issues raised in this appeal is Article VIII of the declaration which provides as follows:

> "No erection of buildings or exterior changes, including color, additions or alterations to any building situated upon any Lot, nor erection of or changes or ,additions in fences, hedges, walls and other structures shall be commenced, erected or maintained, except such as installed or improved by the Declarant in connection with the initial construction of the townhouses and other improvements on the Properties, until (1) a preliminary sketch showing basic plan and general specifications of same shall have been submitted to and approved by the Board of Directors or an Architectural Committee (hereinafter called the 'Committee') appointed by the Board of Directors of the Association, and (2) the final plans and specifications showing the nature, kind, shape, height, materials and location of same shall have been submitted to and approved in writing as to harmony of external design, appearance and location in relation to surrounding structures and topography by the Committee or by three (3) or more representatives appointed by the Committee. A copy of the approved plans and drawings shall be furnished by the Owner to the Committee and retained by the Committee. In the event the Committee, or its designated representatives, fails to approve or disapprove such design and location within sixty (60) days after the said plans and specifications have been submitted to it, *or, in any event, if no suit to enjoin the addition, alteration or change has been filed within the twenty-five (25) days after the commencement of such addition, alteration or change, approval will not be required and this Article will be deemed to have been fully complied with. * * *"* (Emphasis added.)

On or about September 1, 1977, defendant installed green carpeting on the doorstop and stairs outside her unit without submitting plans of the proposed change to plaintiff's Board of Directors. Plaintiff alleges that the change was not discovered until September 13, 1977, and that defendant was immediately notified that the installation of the carpeting was in violation of the declaration of covenants, conditions and restrictions. Subsequently, numerous other demands were communicated to

defendant, both orally and in writing, for removal of the carpeting. However, the record reveals only one letter dated October 21, 1977, from plaintiff's attorney to defendant, advising her of the violation and informing her that unless the carpeting was removed, plaintiff would take legal action against her. Defendant did not remove the carpeting and on November 29, 1977, plaintiff filed this suit for injunctive relief.

The rule for the construction and interpretation of declarations such as presented in this case, has been stated in *Kessler v. Palmeri* as follows:

> "The paramount rule for the interpretation of covenants is to so expound them as to give effect to the actual intent of the parties as of the time the covenant was made and as collected from the whole document construed in connection with the circumstances surrounding its execution. [Citations.] Each case must be decided on its own facts and covenants should be construed most strongly against the covenantor and all doubts and ambiguities should be resolved in favor of natural rights and against restrictions. [Citations.]" *Kessler v. Palmeri* (1972), 3 Ill. App. 3d 901, 904-05, 278 N.E.2d 813, 816.

In support of her motion for summary judgment and on appeal, defendant maintains that plaintiff's action is barred by the 25-day limitation for bringing suit, found in Article VIII. Plaintiff, however, contends that the owner's duty to submit plans is a condition precedent to any further action by the Board; in other words, it contends that the 25-day limitation does not apply if the owner has not submitted plans to the Board. In support of its position, plaintiff relies on two out-of-State cases; *Emonet v. Tomlinson* (La. App. 1964), 163 So. 2d 382, and *Carriage Hills Golf & Country Club, Inc. v. Hertz* (Fla. App. 1974), 305 So. 2d 287.

In *Emonet*, the property owner built a discount store on a lot restricted to single family homes without seeking the approval of the architectural committee. The restriction in that case reads as follows:

> " '* * * or, in any event, if no suit to enjoin the erection of such building * * * has been commenced prior to the completion thereof, such approval will not be required and this covenant will be deemed to have been complied with. * * *' " (163 So. 2d 382, 383.)

The other lot owners in the subdivision did not bring suit until two weeks after the building was completed. On these facts, the reviewing court concluded that "such building" referred to single-family dwellings only and thus the time restriction only applied to the committee's right to assure that the construction conformed with the approved plans. Where the owner totally ignored the approval process and built a commercial building, the time limitation would not apply. However, the dissent in the case determined that the time limitation was included to prevent other

owners from waiting until the building was complete before seeking injunctive relief; therefore, the dissent concluded the time limitation was meant to apply to all situations, and that plaintiff's suit should thus be barred.

In *Carriage Hills Golf and Country Club*, the restrictive covenant prohibited the construction of any building except single-family residences and garages, and prohibited the construction or alteration of any building without the prior approval of the architectural committee. The restrictive covenant there provided further:

> " '* * * or, in any event, if no suit to enjoin the construction has been commenced prior to its completion, approval will not be required and the related covenants shall be deemed to have been complied with fully.' " (305 So. 2d 287, 288.)

The property owner there erected a pre-assembled tool shed upon his premises without first submitting a plan to the committee. Needless to say, the structure was completed before the other owners could file suit. The reviewing court concluded that the time restriction applied only to permitted-type buildings which did not include a storage shed and therefore the time limitation did not bar the suit. The reviewing court noted that defendant's interpretation would thwart the meaning and intent of the restrictions if the placement of such a pre-assembled building could be prevented only by filing suit prior to its completion.

The reviewing courts in both of the above cases concluded that applying the time limitations to those owners who fail to submit plans to the architectural boards would thwart the purpose of the restrictive covenants. However, avoiding this result required a distorted interpretation of the language of the covenants. The dissent in *Emonet* took the position that the purpose of the time limitation was to prevent harm to the property owner who has invested time, money and effort in constructing a building or making an alteration. This position gains support from the use of the phrase "or, in any event," which we note is also used in the restrictive covenant before this court. This phrase has a comprehensive scope meant to include any circumstances. *Olson v. Rossetter* (1948), 399 Ill. 232, 77 N.E.2d 652.

■■ ■ Plaintiff argues that defendant's interpretation is contrary to the overall purpose of the restrictive covenant. However, although the paramount consideration in construing a document is the intent of the parties (*Kessler v. Palmeri*), unless a contract is ambiguous its meaning must be determined from the words used. (*National Bank v. West Construction Co.* (1976), 41 Ill. App. 3d 686, 355 N.E.2d 43.) We are of the opinion that plaintiff's interpretation of the restrictive covenant found in Article VIII is at odds with the unambiguous language used in the covenant and we would agree with defendant that the language used in

the covenant did indeed cover "any event," including the failure to submit plans for the proposed change to the Board.

Plaintiff also contends that the 25-day limitation is unreasonably short and therefore void as against public policy. We would hasten to point out, however, that plaintiff or its predecessor was responsible for the drafting of the 25-day provision and now is hardly in a position to claim relief from its own draftsmanship. Having now litigated the legal effect of the 25-day limitation, the plaintiff association might choose to amend its governing document so as to anticipate future similar situations.

We therefore affirm the order of the circuit court of Kane County.

Affirmed.

LINDBERG and NASH, JJ., concur.