COMMERCIAL MORTGAGE & FINANCE COMPANY, Plaintiff-Appellee, v. LIFE SAVINGS OF AMERICA et al., Defendants (J. David Olson et al., Defendants-Appellants).

Second District No. 2—87—0866

Opinion filed April 8, 1988.—Rehearing denied May 11, 1988.

DUNN, J., dissenting.

William L. Balsley, of Loves Park, for appellants J. David Olson and Mary Ann Olson.

Wesley E. Lindberg, of Reno, Zahm, Folgate, Lindberg & Powell, of Rockford, for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Plaintiff, Commercial Mortgage & Finance Co., filed a complaint to foreclose the mortgage of defendants, who had defaulted on their loan payments. Defendants J. David Olson and Mary Ann Olson pleaded a defense based on usury. After a trial, the circuit court of Winnebago County issued a decree of foreclosure, and this appeal followed. We reverse and remand.

The sole issue before this court is whether or not borrowers are estopped from claiming usury as a defense when they have partici-

pated in the making of a usurious loan.

The relevant facts are as follows. Defendants were the sole proprietors of a Rockford business known as The Bridal Shoppe, which they had owned since 1972. Plaintiff made the following loans to defendants; each was secured by a mortgage on defendants' residence. On February 27, 1978, defendants were loaned $28,285.60 at 19.13% interest. Defendants were next loaned $32,749.65 at 19.13% interest on October 30, 1978. On October 2, 1980, defendants were loaned $17,500 at 21% interest.

The documentation for each loan contained a statement to the effect that the loan was for business purposes only. In or about October 1986, defendants defaulted on their loan payments, and plaintiff commenced foreclosure proceedings. At the time of their default, defendants owed $15,643.25 on the principal balance and $2,804.08 in interest.

Defendants properly pleaded the affirmative defense that plaintiff had engaged in usurious practices prohibited by law. Ill. Rev. Stat. 1979, ch. 74, par. 6.

At trial, J. Robert Hogfeldt, plaintiff's president, testified that on October 2, 1980, he oversaw a loan transaction with defendants. Hogfeldt stated that both defendants had signed the mortgage and note, and they signed a statement that the purpose of the loan was to accumulate business inventory.

Ann Anderson, a loan officer for plaintiff, testified that on October 2, 1980, she handled a loan transaction between plaintiff and defendants. She stated that defendants signed the "business purpose" affidavit which stated that the loan was strictly to be used for business purposes, *i.e.*, business inventory.

Plaintiff put into evidence an October 30, 1980, statement apparently written in David Olson's handwriting which read:

> "This is to rewrite a business loan made on February 27, 1978, to expand inventories and fixtures at 'The Bridal Shoppe,' 1006 E. State St., Rockford, Ill."

Plaintiff also put into evidence a document entitled "Declaration of Business Purpose" and signed by defendants on February 27, 1978. The document read in pertinent part:

> "The undersigned represents and warrants that the credit will be used solely for the following business or commercial purposes: Expand inventory and fixtures at (D.B.A.) 'The Bridal Shoppe.' "

Defendant John David Olson (Olson) testified that prior to 1978, plaintiff had made several loans to defendants for personal purposes.

In February 1978, defendants sought another loan from plaintiff. Olson had attempted to get financing from other sources but was unable to do so. Olson talked with plaintiff's loan manager, Glen Larson (Larson). Olson needed a loan for personal purposes but was at his credit limit according to the terms that were available under a personal loan. Larson explained to him that the only way he could obtain longer term financing was through a business loan. During this conversation, Olson never indicated that he would use the loan for business purposes but instead stated that he would use the money for personal needs. At this time, Larson told Olson that if the bank examiners ever looked through the loan documents, he would have to stick by his statement, otherwise plaintiff would be in trouble. The proceeds from this loan were used primarily to pay bills and installment payments on the prior personal loans issued by plaintiff. Regarding the February 27, 1978, loan, Olson signed a statement that the loan was for business purposes.

Olson went to plaintiff for another loan in October 1978. Again, he met with Larson. Olson was evidently required to sign another declaration-of-business-purpose statement. Olson asked Larson what he was supposed to write, and Larson told him to state that the money was for business inventories and fixtures. Larson gave him plaintiff's stationary on which to make the declaration. Again, Olson did not tell Larson the loan was for business purposes. He apparently did not state exactly what the money was for but thought from his conversations with Larson that the latter knew the money would be used for personal purposes.

Olson sought another loan from plaintiff in October 1980. He met with plaintiff's loan officer, Ann Anderson (Anderson). The purposes of the loan were not discussed. Olson thought that the personal purposes to which the loan money would be applied were obvious to Anderson. He again signed a statement that the loan was solely for business purposes.

When defendants stopped paying monthly installments on or about October 1986, they had made payments of approximately $26,000 on the loan.

In rebuttal, Glen Larson, plaintiff's loan manager in 1978, testified that he had transacted both the February 1978 and October 1978 loans. He inserted the language regarding "business purposes" in the loan documents. Thoroughly questioned on both direct examination and cross-examination regarding his knowledge of the purpose of the loans, Larson did not say that he was unaware of defendants' intended use of the loan money.

At the close of the evidence, the trial court found that loans were for personal, not business, purposes and they were usurious loans. The court asked the parties to brief the issue of whether defendants could properly avail themselves of the usury defense, in light of their participation in obtaining said loans. The court found that defendants were active participants in obtaining a usurious loan and were, therefore, "estopped from asserting the defense of usury for to do so would permit him to take advantage of his own wrong."

The issue before us is whether or not defendants' actions in obtaining the loans prohibit them from asserting the defense of usury. (Ill. Rev. Stat. 1979, ch. 74, par. 6.) Defendants argue that the evidence shows they did not initiate a usurious transaction but merely cooperated in its making. They contend that the statute contains no provisions limiting its effect in cases where the borrower is aware of the excessive interest rate and cooperates in making the loan.

Plaintiff cites three cases to support its contention that defendants were estopped to utilize the usury defense. None of these cases is on point. In *Cohn v. Receivables Finance Co.* (1970), 123 Ill. App. 2d 224, the defendant had been the plaintiff's lawyer for a number of years. In an evident breach of his fiduciary duty, defendant initiated the discussion of the loan with plaintiff and set both the amount and percentage rate. The *Cohn* court noted that the general purpose of the usury statute is to protect the necessitous borrower from unscrupulous lender. In *Cohn*, the lender had to be protected from an unscrupulous borrower.

In *Rogus v. Continental Illinois National Bank & Trust Co.* (1972), 4 Ill. App. 3d 557, the borrower initiated the loan and its terms, not the lender. The borrower voluntarily offered to pay a year's interest on a three-month loan. The court concluded that the borrower had initiated the usurious transaction and was estopped from asserting the usury defense.

The final case, *Hall v. Montaleone* (1976), 38 Ill. App. 3d 591, arose out of an action for specific performance. The defendant-lender sought to assert the usury defense but the trial court held that the usury defense is never available to a lender.

■■ ■ The facts of the instant case indicate this situation to be of a necessitous borrower and an unscrupulous lender, *i.e.*, exactly the type of interaction the statute was intended to redress. The defendants needed a loan to meet their loan payments. The plaintiff *initiated* the idea of evading the statute against usury by making this a "business loan," at rates which exceeded those which could be charged for personal loans. Plaintiff set the terms and type of the

loan; defendants merely went along to get the money they needed. This was never a business loan, and the onus of such an illegal maneuver falls squarely upon the initiator, *i.e.*, the plaintiff.

We conclude that the trial court committed reversible error in denying the usury defense to defendants.

Accordingly, we reverse the judgment of the trial court's decision; the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

INGLIS, J., concurs.

JUSTICE DUNN, dissenting:

I respectfully dissent. The majority considers this a case of a necessitous borrower and an unscrupulous lender. I strongly disagree. I fail to see how the plaintiff-lender here can be branded unscrupulous because it suggests to the defendant, who is refused a personal loan, that he may obtain a loan for business purposes. The majority puts aside the fact that the borrower is an entrepreneur engaged in a bridal shop business who, in order to obtain a loan, signs written statements that the loan proceeds would be used in his business. The fact that the loan proceeds could be traced to personal rather than business use by the defendant is of no great moment in my opinion. I feel the opinion of the majority will have a definite chilling effect on legitimate financial transactions in the market place.

The defendant-borrower is the one sought to be protected by the law here involved. He knowingly signed and delivered to the plaintiff written statements that the loan proceeds were for use in his business. Under these facts, I have serious reservations about the finding of the trial court that this loan transaction was usurious. Nevertheless, I'd affirm the judgment of the trial court that the defendant by his actions is estopped from raising the defense of usury. See *Cohn v. Receivables Finance Co.* (1970), 123 Ill. App. 2d 224, 227.