THE EXCHANGE NATIONAL BANK OF CHICAGO, Trustee, Plaintiff-Appellee, *v.* THE CITY OF DES PLAINES, Defendant-Appellant.—(CHURCH OF THE MASTER-UNITED CHURCH OF CHRIST *et al.*, Intervenors.)

(No. 59671;

First District (2nd Division)—September 16, 1975.

Robert J. Di Leonardi, of Des Plaines, for appellant.

Maurice J. Nathanson and Frank Martoccio, of Chicago (Levin & Novoselsky, of counsel), for appellee.

Mr. PRESIDING JUSTICE DOWNING delivered the opinion of the court:

Exchange National Bank (plaintiff), after a hearing without a jury, obtained a judgment against the City of Des Plaines (defendant) declaring invalid, as applied to plaintiff's property, defendant's single-family zoning regulation and a private subdivision restriction.

This appeal presents two major issues: first, concerning the private subdivision restriction: (a) did defendant have standing to raise the deed restriction; (b) was the restrictive covenant abrogated by the agreement of the lot owners of the subdivision to allow the construction of a church within the restricted area; and (c) did the evidence presented show such a change in the neighborhood as to negate the purpose of the restrictive covenant. The second issue involves the trial court's holding that as to the subject property, the present zoning is null and void. We find it unnecessary to consider the second issue in light of our disposition of the issues regarding the restrictive covenant.

Plaintiff, as trustee, is the titleholder of three lots in A. T. McIntosh & Co.'s Des Plaines Acres, a subdivision in the City of Des Plaines. The

property, zoned R-2 single-family residence, is located in a 25-lot subdivision subject to a 1938 restrictive covenant restricting the use of the property for single-family residence purposes only. This matter is before this court for the second time. The first trial court held the restrictive covenant valid and entered judgment against plaintiff. The propriety of the existing zoning was not determined in the first trial. In the first trial, the Church of the Master-United Church of Christ (hereinafter Church) and 14 individuals (hereinafter intervenors), all property owners in the 25-lot subdivision, intervened, represented by their own attorney, and counterclaimed for a declaration that the use restrictions set forth in the subdivision were valid and enforceable as applied to plaintiff's lots. The first trial court considered this issue and after certain oral stipulations and argument on the issues, it entered an order upholding the restriction. No evidence was submitted other than that included in the oral stipulation.

Upon appeal, this court reversed and the cause was remanded to the trial court with directions to allow plaintiff to present evidence showing any change in the character and environment of the area in order to determine the validity of the restrictive covenant in the subdivision plat; and if invalid then to determine the invalidity of the zoning as applied to the property. (*Exchange National Bank v. City of Des Plaines* (1st Dist. 1970), 127 Ill.App.2d 122, 262 N.E.2d 48.) Upon remand the trial court considered the pleadings and evidence presented by the parties. The intervenors were no longer represented by separate counsel; however, they continued as parties and their position was asserted by counsel for the defendant.[1] In fact, Charles E. Fidler, one of the intervenors, testified for the defendant, and it was stipulated that if the two other intervenors along with three other individuals present at the hearing were sworn, their testimony would be similar to that given by Fidler.

The evidence at the second trial developed the following pertinent facts. In 1938 property, consisting of 25 lots, was subdivided and known as the A. T. McIntosh & Co.'s Des Plaines Acres. The plat of subdivision contained, amongst other provisions, certain use restrictions for said property. The pertinent provisions in said use restrictions are:

"All lots in this Subdivision shall be subject to the following restrictions

(1) The building erected on each such lot shall be for residence purposes only.

(2) Each lot to have one (1) single family residence only.

---

[1] The record suggests the intervenors were no longer able to pay for separate counsel.

* * *

(6) The area of the first floor of any main dwelling shall not be less than 600 square feet.

(7) All plans for the main dwelling shall be prepared by a licsensed [*sic*] architect.

(8) Any main dwelling erected in this subdivision shall cost not less than $3500.00 and said cost shall be exclusive of land cost."

In 1961 the owners of 14 of the 25 lots signed an "AGREEMENT IN RE RESTRICTIVE COVENANTS" which referred to the 1938 restrictions, and stated that said single-family residence restriction "prohibits and/or prevents the erection of a church building" upon lots 9 and 10, and that the signers abrogate and declare null and void the restrictions as to a church on said lots, and that the signers do "irrevocably approve and consent to the construction, use and maintenance by the Church of such church buildings as is or may hereafter be proposed." This agreement was recorded with the recorder of deeds of Cook County, and thereafter a church building with school was built on lots 9 and 10 fronting on Central Road. The Church also owns a third lot lying in a southerly direction from lots 9 and 10. A residence is maintained on the third lot.

The 25-lot subdivision is basically triangular in shape. It is bounded on the north by Central Road, on the southerly border by Rand Road. Plaintiff's three lots (No.'s 11, 12 and 13) are at the west end of the 25-lot tract, are unimproved and adjoin the Church property. The property on the west side of plaintiff's is not within the City of Des Plaines, and at the time of the trial contained a gasoline filling station and a drive-in restaurant. There is no commercial development or zoning within the 25-lot subdivision, and except for the church, the lots are either developed with single-family residences or vacant. The single-family residences front on either Rand Road or Central Road.

The 25-lot subdivision is zoned under the defendant's zoning ordinance for R-2 single-family residence use which requires lot sizes of 6,875 square feet. Included within the permitted uses of the R-2 district are churches, parks, schools and other uses generally found in single-family districts. The zoning ordinance also provides in section 7A.3 the following provision:

"7A.3. This zoning ordinance is not intended to abrogate any easement, covenant, or any other private agreement provided that where the regulations of this zoning ordinance are more restrictive (or impose higher standards or requirements) than such ease-

ments, covenants or other private agreements, the requirements of this zoning ordinance shall govern."

Under the defendant's zoning and subdivision regulations, plaintiff's three lots could be resubdivided into four single-family lots and not be in violation of the 1938 restrictive covenant.

Rand Road, also known as U.S. Highway 12, runs in a northwesterly-southeasterly direction and is heavily traveled. Central Road, also heavily traveled, runs for a number of miles both east and west of the 25-lot subdivision.

Since 1938 the area surrounding the 25-lot subdivision developed as follows. Across Central Road, to the north, is approximately 40 acres of land in the Village of Mt. Prospect, zoned for and used as a large shopping center containing over 30 stores with large customer parking facilities. To the east of the shopping area on the north side of Central Road are lots upon which single-family residences are located. Across Rand Road in a southwesterly direction, the property is within the City of Des Plaines which changed the zoning from residential to C-3 Commercial Use. That area is improved with a new and used car dealership, a car wash, a gasoline service station, a restaurant, and an enclosed junk yard. To the south of the commercial property is an area zoned and used for single-family residences, some of which border on Rand Road with a large stockade fence blocking the property from Rand Road.

One of the owners of the property in question testified that the three lots were purchased in 1964 for $26,000 with the understanding the zoning was for single-family purposes and the property contained a restriction understood to be a covenant for single-family dwellings, although he believed the restriction broken by the church development; that when application for rezoning was made to the defendant, the site was to be used for a lumber company to display homes on the site, but that now the owners desired to build a shoe store on the location, but that the size of the building or plans had not been finalized; that the site was considered suitable for single-family purposes with an asking price of $7,000 to $10,000 per lot; and that no written offers for single-family purposes had been received. Testimony was also offered by an architect that plaintiff proposed for the site a 7,700 square foot building with 80 parking spaces.

At the time plaintiff purchased the property, the church was located on the property to the east of plaintiff's three lots, and the large 40-acre shopping area existed across Central Road.

The pastor of the Church testified on behalf of the plaintiff that his personal view was that he would not oppose the proposed use, but that

the Church had taken no official position and he was not speaking for it; and that the Church was not represented by legal counsel in the second trial because it felt the money could be better used for something else.

As to the highest and best use of plaintiff's property, Albert J. Carello, a real estate broker, and Ivan Alten, an architect and city planner employed in Kane County (Illinois), both testifying on behalf of the plaintiff, were of the opinion that the highest and best use was for a retail business. No testimony was presented by the defendant on this subject.

Alten testified that a business use on the property would have no deleterious effect upon nearby single-family houses; that it would not be feasible to develop the property for single-family uses although he admitted not being familiar with the defendant's subdivision regulations. Alten was of the opinion that it would be "bad planning" to have single-family uses along a highway, and that he did not consider Rand Road a dividing line under the circumstances of this case.

Rolf Campbell, a city planning and zoning consultant testifying for the defendant, was of the opinion the property is suitable for single-family development; that under the existing zoning regulations, plaintiff's property could be resubdivided into four lots; that although the nearby commercial uses had an influence on the subject property, there was a more profound effect from the existing nearby single-family homes in the subdivision as well as the 100 single-family homes in the immediate block to the east of the subject property and approximately 200 in the blocks to the north; that in his opinion the proposed commercial use would have an adverse effect upon the adjacent church, the nearby single-family homes to the east, and would constitute an intrusion of commercial use into a single-family area. Also testifying for the defendant, Ralph Martin, a real estate broker and appraiser, was of the opinion a commercial use on plaintiff's property would cause a breakdown of the single-family zoning within the subdivision resulting in a change in the residential character of the area.

As to value, plaintiff's expert Carello was of the opinion that for a retail business use the property would be worth $3.00 per square foot or $150,000, and as presently zoned $15,000 to $16,000 for all three single-family lots. On behalf of the defendant, witness Martin was of the opinion plaintiff's property was worth $28,000 as presently zoned.

Charles Edward Fidler, an owner of a single-family residence within the subject subdivision, testified for the defendant that he owned and resided in his home for 20 years; that before he acquired the property he verified that the property was zoned single family and that the subdivision was subject to a restriction for single-family use; that he would

not have purchased the property except for those protections; and that in his opinion, plaintiff's proposed use would devalue his property which is worth $35,000. It was stipulated that the testimony of five other single-family homeowners within the subject subdivision would be substantially the same as Fidler.

The trial court after considering all the pleadings and evidence found that "plaintiff has produced sufficient evidence to show a substantial change in the character and environment of the area" and that as "the plaintiff has substantially proven all of the allegations of the Complaint and amendment thereto," declared that the restrictive covenant is abrogated and therefore null and void, and that the defendant's zoning ordinance as applied to plaintiff's premises is null and void. The trial court's order further provided that plaintiff is restricted in the use of the property to a "retail store and office building as designed in the architectural plan introduced in evidence as plaintiff's Exhibit 33."

## I.

In our opinion the overriding issue in this appeal concerns the 1938 restrictive covenant. In the first appeal this court remanded the cause to the trial court for a full hearing on the merits so as to consider evidence of zoning changes, together with evidence of a change, if any, in the character of the area. In determining whether the trial court was correct in holding the 1938 restrictive covenant abrogated and therefore null and void, we must look at a number of questions.

## A.

Plaintiff contends defendant had no standing to raise the affirmative defense of the restrictive covenant since it was not a party to that covenant. (See *Corcoran v. Franklin County Coal Co.* (4th Dist. 1928), 249 Ill.App. 551.) Further, plaintiff argues the intervenors' counterclaim must be dismissed because they failed to appear by their counsel in the second trial.

Plaintiff brought this suit as an action for a declaratory judgment praying for invalidation of the defendant's zoning ordinance as applied to plaintiff's property. Defendant raised the restrictive covenant in its answer as an affirmative defense. Defendant alleged:

> "That by restrictions contained in Plat of Subdivision recorded April 29, 1938, in the Office of the Recorder of Deeds, Cook County, Illinois, as document number 12152266, and by covenants, conditions and restrictions contained in Warranty Deed recorded July 21, 1938, in the Office of the Recorder of Deeds, Cook County, Illinois, as document number 12188608, all of the subject property

is restricted for use as single family residential only, and to allow the uses proposed by plaintiff would constitute a direct violation and abrogation of said covenants, conditions and restrictions and said Section 7A.3 of the Zoning Ordinance of the City of Des Plaines."

Section 7A.3 of defendant's zoning ordinance reads:

"7A.3. This zoning ordinance is not intended to abrogate any easement, covenant, or any other private agreement provided that where the regulations of this zoning ordinance are more restrictive (or impose higher standards or requirements) than such easements, covenants or other private agreements, the requirements of this zoning ordinance shall govern."

If the foregoing section of the ordinance is to have any meaning, defendant must have the power to deny zoning changes because of covenant restrictions. It is to be noted the record reveals plaintiff joined issue on this contention by filing an answer setting forth the abrogation agreement and the building of the church.

■■ The 1938 single-family restriction on the subject property was known to plaintiff at the time of the 1964 purchase although he thought the 1961 agreement permitting the church within the subdivision destroyed the restrictive covenant. The 1938 restrictive covenant was clearly a restriction of the subdivision for the benefit and protection of all owners of property in the subdivision. The defendant has an interest, reflected in its ordinance, to protect the rights of all those persons interested in maintaining the subdivision restrictions. The property owners of the subdivision were owners of real property within the limits of the City of Des Plaines. Ordinances to compel obedience to covenants when non-discriminatory and applicable to all alike within a given area may be adopted and enforced. (See *Baddour v. City of Long Beach* (1938), 279 N.Y. 167, 18 N.E.2d 18, 20; 20 Am. Jur. 2d Covenants § 277 (1965).) If defendant is not allowed to raise the covenant restriction as a defense to a declaratory action seeking to have the zoning ordinance declared invalid, it is our opinion such an ordinance could lose its force and effect. Of course, in this situation, the restrictive covenant and the zoning ordinance as applied to plaintiff's property, both provided for single-family use for plaintiff's property. One attacking the single-family restrictive covenant would present evidence substantially similar to one attacking the arbitrariness of single-family zoning as applied to specific property.

■■ Thus defendant, through its zoning ordinance and by its affirmative defense in the answer to the complaint, has standing to raise this issue. The question of the restrictive covenant was also raised by the intervenors

in the counterclaim. At the first proceeding in the trial court and in this court, the intervenors were represented by separate counsel. However, the intervenors did not appear by counsel at the second trial. There is nothing in the record before us to indicate the intervenors' counterclaim was ever dismissed. The first trial of the matter was decided on the intervenors' claim, and the appellate court remanded the case ordering the trial court to consider evidence relating to the validity of the restrictive covenant, and only if the covenant was found invalid was the court to consider the issue regarding the validity of the zoning ordinance.

■■ In the case at bar, there was no withdrawal of the intervenors' claim, rather the claim of the intervenors was presented by the defendant's attorney. One of the intervenors testified as to his reliance on the covenant and its continued validity. It was stipulated that other intervenors would testify in the same manner if they were called. Since the case was remanded specifically for a determination of the validity of the restrictive covenant, and the intervenors did not withdraw or the court dismiss their counterclaim, in our opinion the trial court properly considered the validity of the restrictive covenant, both as raised by the defendant as an affirmative defense and the intervenors in their counterclaim.

### B.

The next question to be resolved is whether the single-family restriction was abrogated by an agreement signed by owners of 14 of the subdivision's 25 lots. This agreement was signed in February of 1961, and recorded with the Cook County recorder of deeds on August 24, 1961, in order to allow the construction of a church on lots nine and ten of the subdivision. The agreement read in part:

"1. All Covenants, agreements, conditions, reservations, restrictions, and charges heretofore created and/or established in any way prohibiting or preventing the construction, use and maintenance of the buildings other than private residences or single family dwellings upon Lots Nine (9) and Ten (10) inclusive, in Arthur T. McIntoch's [sic] subdivision aforesaid in so far only as they prohibit or prevent the construction, use and maintenance of buildings other than private residences or single family dwellings are hereby abrogated and declared null and void as though the same had never been created but in all other respects shall remain in full force and effect.

2. All parties hereto irrevocably approve and consent to the construction, use and maintenance by the Church of such church buildings as is or may hereafter be proposed.

3. This agreement shall extend and inure to the benefit of, and be binding upon, the successors and assigns of the respective parties hereto."

The trial court's judgment order found that "plaintiff  *  *  *  produced sufficient evidence to show a substantial change in the character and environment of the area" and thereupon declared the restrictive covenant abrogated, null and void. The trial court's judgment order did not find the recorded agreement of August 24, 1961, abrogated the restrictive covenant. Nevertheless, plaintiff contends that the agreement recorded August 24, 1961, and the subsequent construction of the church within the 25-lot subdivision abrogated the restrictive covenant.

■ The single-family use restriction contained in the 1938 subdivision plat was a form of private land use control which preceded public control of land use effected through zoning ordinances. The private land use control can be accomplished either by deed restrictions, covenants for the benefit of land sold or retained, restrictions by a plat of subdivision, affirmative covenants running with the land and conditions providing for a reverter of title if the conditions are violated. Here we are concerned with a restriction created by a plat of subdivision recorded in 1938. The restrictions contain no language providing for a reverter of title if they are violated. Once the plat with restrictions is recorded, every subsequent lot purchaser has constructive notice of the restriction. Thus lot owners may enforce the restriction against any other lot owner.

The single-family restriction involved in this case is a general restriction. One seeking to enforce such a restriction must show that the violator purchased his lot with notice of the restriction, either from actual knowledge or from a recorded document. Here one of the beneficial owners of the plaintiff land trust admitted knowledge of the recorded restriction, though he believed the building of the church broke the agreement.

■■ The question we must decide is what is the effect of the 1961 agreement signed by owners of 14 of the 25-lot subdivision. The 1938 plat is silent as to a method of abrogating or modifying the single-family restriction. We have found no Illinois cases directly in point. There is persuasive authority that for an abrogation to be effective, it must be signed by all of the persons for whose benefit the covenant was made. (See 20 Am. Jur. 2d *Covenants* § 270 (1965); R. Kratovil, *Real Estate Law*, ch. 27, § 451 (5th ed. 1969).) Thus the agreement in the case at bar was not sufficient to abrogate the restrictive covenants set forth in the plat of subdivision. While the lot owners not signing the agreement might be blocked from objecting to the construction of the church by the doctrine of laches or acquiescence, their failure to object to the church may not be used against them to abrogate the entire agreement.

*Mechling v. Dawson* (1930), 234 Ky. 318, 28 S.W.2d 18, 19; *Cowling v. Colligan* (1958), 158 Tex. 458, 312 S.W.2d 943, 946.

By its language the abrogation only applies to lots nine and ten for the sole purpose of allowing the construction of a church which would otherwise violate the restriction. Even if the agreement were binding on all of the lot owners, it is limited to lots nine and ten and the covenant "* * * in all other respects shall remain in full force and effect."

■■ The building of the church and school within the subdivision was a technical violation of the 1938 single-family restriction. However, it should be noted that under defendant's zoning ordinance a church and school is a permitted use in single-family residential districts. One has only to apply our common knowledge and observations to community development to recognize that a church or school is not uncommon in a single-family residential area. We do not think the church and school building in this subdivision amounts to a substantial or fundamental change in the character or environment of this subdivision to justify, by that action, voiding the 1938 single-family restriction. See *Cowling v. Colligan*; and *Housing Authority v. Church of God* (1948), 401 Ill. 100, 108, 81 N.E.2d 500.

Thus we hold that the 1938 restriction is not invalidated by either the 1961 agreement, which we consider invalid for the failure of all 25 lot owners to sign the agreement, or the building of the church and school building.

## C.

We next consider the finding of the trial court that there was a "substantial change in the character and environment of the area" thereby causing the restrictive covenant to be abrogated rendering it to be null and void. Defendant argues plaintiff did not prove the neighborhood had changed in character and environment as to make it unfit and unreasonable to continue the original use.

■ While restrictive covenants are not favored under Illinois law (*Exchange National Bank v. City of Des Plaines* (1st Dist. 1970), 127 Ill.App.2d 122, 127, 262 N.E.2d 48), unless the covenant is contrary to law it will be enforced and its breach enjoined unless the party against whom enforcement is sought sustains the burden of showing in accord with equitable principles that continued enforcement of the covenant would be inequitable. *Boschelli v. Villa Park Trust & Savings Bank* (2nd Dist. 1974), 23 Ill.App.3d 82, 85, 318 N.E.2d 527.

In accord with equitable principles, a covenant will not be enforced when there has been such a change in the character and environment of the property that the object of the restrictions cannot be accomplished

by their enforcement, or if by such changes it would be unreasonable or oppressive to enforce them. (*Dolan v. Brown* (1930), 338 Ill. 412, 419, 170 N.E. 425; *Wiegman v. Kusel* (1915), 270 Ill. 520, 526, 110 N.E. 884; *Boschelli v. Villa Park Trust & Savings Bank, supra;* 20 Am. Jur. 2d *Covenants* § 281 *et seq.;* (1965) Annot., 53 A.L.R.3d 492 *et seq.* (1973).) Under this doctrine the character and condition of the adjoining property must have been so changed as to render the restrictions inapplicable according to the spirit of the contract. *O'Neill v. Wolf* (1930), 338 Ill. 508, 532, 170 N.E. 669.

In determining whether there has been a change in the character of the neighborhood, the court may consider the surrounding area as well as the subdivision governed by the restrictions of the covenant. However, changes within the area itself are considered more important than those in the surrounding area. (See 20 Am. Jur. 2d *Covenants* § 282-284 (1965); *Annot.*, 53 A.L.R.3d 492, 495 (1973).)

> "Changed conditions outside the restricted area must not be permitted to terminate the restrictions where this would cause property owners within the restricted area to suffer damage. Where no radical change in a restricted residential tract has been shown, the fact that apart from and surrounding the tract some business has grown up, and that the land has become more valuable in consequence, does not relieve the lots in the restricted district from the restrictions." 20 Am. Jur. 2d *Covenants* § 284 (1965).

Evidence of changed conditions in the surrounding area may be relevant to determining whether the restricted subdivision itself has changed. However, if the subdivision itself has not changed, changes outside the area, standing alone, should not be allowed to abrogate the restrictions to the detriment of lot owners within the subdivision who relied on the restrictions. See *Boschelli v. Villa Park Trust & Savings Bank* (2nd Dist. 1974), 23 Ill.App.3d 82, 86.

As directed by this court in its first decision, plaintiff presented evidence regarding changes in the neighborhood surrounding the subdivision as well as the construction of the church within the subdivision. We have previously noted that the location of a church is a technical violation of the single-family use restriction. We do not think it to be a substantial or fundamental violation sufficient to abrogate a restrictive covenant. (*Mechling v. Dawson; Cowling v. Colligan.*) Especially is this true when no other change took place in the 25-lot subdivision.

The record shows that in 1938, both Rand and Central Roads had 100-foot rights-of-way, while the road at the east end of the subdivision provided only a 66-foot right-of-way. The evidence did establish heavy traffic on the thoroughfares surrounding plaintiff's property, and the in-

crease of commercial activity in the surrounding area evidenced by the large commercial developments both across Rand and Central Roads. However, the record also evidenced large residential developments on the opposite side of Rand and Central near the commercial developments. On the property immediately to the west of plaintiff's property and adjoining the subdivision, although the record is not clear, we assume the gasoline station and drive-in restaurant were built after 1938.

None of these changes have yet occurred within the subject subdivision. Rather all lot owners, except for the church property, have developed their lots in conformance with and in reliance on the single-family use restriction. One of the intervenors and owner of one of the 25 lots testified as to his reliance on the single-family restrictions and the adverse effect a violation of those restrictions would have on his property. It was stipulated that, if called, other lots owners within the subdivision would give similar testimony.

■■ The single-family use restriction should only be invalidated if it no longer serves the function for which it was intended. As stated in *West Almeda Heights Home Owners Association v. Board of County Commissioners* (1969), 169 Col. 491, 498, 458 P.2d 253, 256:

> "Normal growth and change and the possibility of encroachment of commercial uses, we can infer, were contemplated when the covenants and the master plan of development were created by the original owner and platter. There would be no need for the covenants to protect the subdivisions from inroads of commercial expansion if it were not expected that such might take place. As long as the original purpose of the covenants can still be accomplished and substantial benefit will inure to the restricted area by their enforcement, the covenants stand even though the subject property has a greater value if used for other purposes."

Plaintiff purchased this property with knowledge of the singe-family restrictions, and as stated in *Wiegman v. Kusel*, 270 Ill. 520, 524, "[i]f a subsequent owner has taken title with notice, * * * of a binding agreement * * * establishing a building restriction, he will be bound to abide by it * * *."

■■ In our opinion, this 25-lot subdivision is separated from the commercial areas across both Rand and Central Roads. As we recently held in *Johnson v. City of Elgin* (1st Dist. 1975), 31 Ill.App.3d 250, 333 N.E.2d 287, zoning lines are drawn so that roads can separate and divide different uses. In *Reese v. Village of Mount Prospect* (1st Dist. 1966), 72 Ill.App.2d 418, 219 N.E.2d 682 (abstract opinion), this court said that the fact that single-family property fronts on Rand Road or is near or adjoins commercial property would not render the classification invalid.

Although these cases involve zoning disputes, in our opinion the same question—change in neighborhood—is also involved in this case.

Notwithstanding the neighborhood changes, shown in this case, we do not think they negate the purpose for which the single-family restriction was entered into by the lot owners of the subdivision. In our opinion the circuit court thus erred in abrogating the covenant finding the restrictions null and void.

## II.

So holding, the judgment order of the circuit court must be reversed. It is therefore unnecessary to determine the correctness of the trial court with respect to the zoning issue. Accordingly the judgment of the circuit court of Cook County is reversed.

Judgment reversed.

STAMOS and LEIGHTON, JJ., concur.