(No. 67155.—

COMMERCIAL MORTGAGE & FINANCE COMPANY, Appellant, v. LIFE SAVINGS OF AMERICA *et al.* (J. David Olson *et al.*, Appellees).

*Opinion filed June 19, 1989.*

Reno, Zahm, Folgate, Lindberg & Powell, of Rockford (Wesley E. Lindberg and J. Todd Kennedy, of counsel), for appellant.

William L. Balsley, of Loves Park, for appellees.

JUSTICE MILLER delivered the opinion of the court:

The plaintiff, Commercial Mortgage & Finance Company (Commercial Mortgage), filed a complaint in the circuit court of Winnebago County to foreclose a mortgage which secured a loan that it had made to the defendants, J. David Olson (Olson) and Mary Ann Olson. In their answer, the Olsons claimed, as an affirmative defense, that the loan in question was usurious. Following a bench trial, the circuit judge ruled in favor of Commercial Mortgage and entered a decree of foreclosure. The Olsons appealed from the trial court's decision, and the appellate court, with one justice dissenting, reversed. (167 Ill. App. 3d 762.) We allowed Commercial

Mortgage's petition for leave to appeal from the appellate court's judgment (107 Ill. 2d R. 315).

Since 1972, the Olsons have been the sole proprietors of a business located in Rockford, Illinois, known as The Bridal Shoppe. Prior to 1978, Commercial Mortgage extended several loans to the Olsons. It is uncontested that Commercial Mortgage made these loans with the understanding that they were personal in nature, and that the Olsons used the proceeds of these loans for personal, rather than business, purposes. The Olsons received the last of these undisputedly personal loans in December 1977 with the first installment payment due on February 1, 1978.

Unable to make the first payment on this loan, Olson unsuccessfully sought additional financing at various lending institutions. Olson then discussed, with Commercial Mortgage loan officer Glen Larson, the possibility of rewriting the December 1977 loan that he had received from Commercial Mortgage for a longer term. As a result of their discussion, the Olsons obtained a loan on February 27, 1978, for approximately $28,785 at an interest rate of 19.13%. This loan was secured by a mortgage on the Olsons' residence. The loan documents included a note, a mortgage and a separate written declaration, each signed by the Olsons and each stating that the proceeds of the loan would be used for business purposes only. The Olsons received a check from Commercial Mortgage in the amount of $1,860 with the remainder of the loan proceeds used to pay off the December 1977 loan. None of the $1,860 was used by the Olsons in their business.

In October 1978, the Olsons fell behind in making the payments on the second loan and again discussed the possibility of refinancing the loan with Larson. On October 30, 1978, the Olsons obtained a loan in the amount of approximately $32,750 at an interest rate of 19.13%.

Again, the loan documents contained statements signed by the Olsons to the effect that the loan proceeds were to be used for business purposes. The Olsons received no funds from this transaction. All of the proceeds of the loan went toward retiring the previous loan.

In October 1980, the Olsons again approached Commercial Mortgage about rewriting the loan. On this occasion, Olson discussed the matter with loan officer Ann Anderson. On October 2, 1980, the Olsons received a loan for $36,277 at an interest rate of 21%. Of this amount, $17,500 was the principal amount borrowed and $18,777 represented interest on the loan. As with the two previous loans, the Olsons signed a note, mortgage and separate statement each indicating that the loan was a business loan. The Olsons received a check for $746 from this transaction with the remaining proceeds used to pay off the loan of October 1978. None of the $746 was used in the Olsons' business.

In October 1986, after having made payments for six years totaling $18,143, the Olsons defaulted on the loan. At the time the default occurred, the Olsons owed $15,226 on the principal and $2,908 in interest on the October 1980 loan. Commercial Mortgage filed suit in the circuit court of Winnebago County on October 24, 1986, to foreclose the mortgage on the Olsons' residence. The Olsons answered the complaint by denying liability for any deficiency in the loan payments and by raising the affirmative defense of usury. In their prayer for relief, the Olsons requested that the court apply all of the payments previously made to the principal amount borrowed, declare that Commercial Mortgage was not entitled to any interest on the note and dismiss the complaint. The Olsons did not seek the return of any money paid in excess of the principal amount, nor did they claim the right to any statutory penalty or attorney fees under the usury statute.

On January 15, 1987, Commercial Mortgage filed a motion to dismiss the Olsons' affirmative defense, stating that the October 1980 loan was a business loan and therefore exempt under the usury statute. The Olsons responded by filing an affidavit stating that the loan in question was a personal loan. No ruling was made on the motion to dismiss, and the cause proceeded to trial on June 15, 1987.

At trial, the parties agreed that if the loan was a business loan, it was exempt from the statutory limitations on interest imposed by the Interest Act (Ill. Rev. Stat. 1979, ch. 74, par. 1 *et seq.*), but that, if the loan was personal, the 21% interest charged by Commercial Mortgage was in excess of the statutory maximum and the loan was usurious. Thus, the only question in dispute was whether the October 1980 loan was for personal or business purposes.

In support of its position that the loan was intended by the parties as a business loan, Commercial Mortgage introduced into evidence the documents for the February 1978, October 1978 and October 1980 loans, all signed by the Olsons and all stating that the proceeds of the loans would be used for business purposes only.

In response, Olson admitted signing the loan documents containing the declarations of business purpose. Olson testified, however, that he had never intended the loan as a business loan and that Commercial Mortgage had been aware of this fact since the time it first rewrote the Olsons' personal loan as a business loan in February 1978. Olson explained that, when he had sought a loan with a longer term from Commercial Mortgage in February 1978, Larson, the loan officer, had informed him that the only way for the Olsons to obtain such a loan was to have the loan classified as a business loan. According to Olson, Larson warned Olson that, if the bank examiners ever asked any questions about the

loan, Olson would have to adhere to his story that the loan was for business purposes, otherwise Commercial Mortgage would be in trouble. Olson further stated that when the loan was rewritten in October 1978 and in October 1980, he and the loan officers had not discussed specifically whether or not the loan would be used for business or personal purposes but that the loan officers indicated that, in order to have the loan rewritten, the transaction would have to be handled in the same manner as it had in the past.

At the suggestion of the trial judge, Commercial Mortgage called Larson in rebuttal. In response to questions put to Larson by both parties, Larson failed to deny the conversation of February 1978 regarding the intended purpose of the loan. Moreover, Larson did not deny that he instructed Olson to complete the paperwork to show the transaction as a business rather than a personal loan. Finally, Larson made no claim that he could not remember the substance of his conversation with Olson. Instead of responding directly to the questions asked of him regarding the Olsons' loan, Larson stated only that the transaction had occurred several years prior and that the documents should speak for themselves.

Following closing arguments, the trial judge found that the loan in question was a personal rather than a business loan and that, at the time of the transaction, both parties were aware of this fact. On its own initiative, the court requested that the parties brief the issue of whether the Olsons' participation in a usurious transaction would preclude them from seeking relief in a court of equity. On July 28, 1987, the trial judge found that Olson was an active participant in obtaining the usurious loan from Commercial Mortgage. Based on this finding, the judge concluded that Olson was estopped from asserting the defense of usury, believing that to al-

low him to do so would permit him to take advantage of his own wrong. A decree of foreclosure was entered by the court on August 5, 1987.

The appellate court reversed, concluding that the trial court had erred in not allowing the Olsons to avail themselves of the usury defense. The appellate court found that the transaction involved a necessitous borrower and an unscrupulous lender and that this was precisely the type of situation that the usury statute was intended to redress. (167 Ill. App. 3d at 765.) A dissenting justice believed that the Olsons should be estopped from raising the usury defense because of their complicity in the transaction. (167 Ill. App. 3d at 766 (Dunn, J., dissenting).) The dissenting justice further believed that the majority's decision would have a chilling effect on legitimate financial transactions.

Commercial Mortgage argues here that the interest charged on the October 1980 loan was not usurious. Commercial Mortgage correctly states that, at the time of the loan, section 4(1) of the Interest Act (Act) (Ill. Rev. Stat., 1980 Supp., ch. 74, par. 4(1) (recodified as Ill. Rev. Stat. 1987, ch. 17, par. 6404(1))) provided that the maximum lawful interest rate was 9% per annum and points out that section 4(1)(c) of the Act exempts from this limitation business loans made to persons owning and operating businesses as sole proprietors. Commercial Mortgage then argues that the Olsons owned their own business, that the loan documents contained statements signed by the Olsons to the effect that the loan proceeds would be used for business purposes only and that these facts support a finding that the loan was a business loan and therefore not usurious.

We are not persuaded by this argument. Commercial Mortgage's argument ignores Olson's testimony that the loan was intended by both parties as a personal loan. Whether the loan in this case was a personal or business

loan was a question of fact resolved against Commercial Mortgage by the trial judge. When reviewing the findings of a trial court in a bench trial, this court will not disturb the trial court's finding and substitute its own opinion unless the finding of the trial court is against the manifest weight of the evidence. (*Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 356.) After reviewing the documentary evidence introduced by Commercial Mortgage and listening to the testimony of Olson and Larson concerning the circumstances surrounding the loan, the trial judge in this case accepted Olson's version of events and found that the loan was personal in nature and that Commercial Mortgage was aware of this fact when it extended the loan. Because the trial court's finding is supported by the record, we decline to substitute our judgment for that of the court below.

We note incidentally that the Illinois General Assembly amended section 4(2)(a) of the Interest Act (Ill. Rev. Stat., 1980 Supp., ch. 74, par. 4(2)(a)) to exempt loans secured by mortgages on residential real estate from the statutory limitations on interest beginning November 8, 1979. (Pub. Act 81—1097, 1979 Ill. Laws 4207—11; see also Pub. Act 82—660, 1981 Ill. Laws 3436—57 (codified as Ill. Rev. Stat. 1981, ch. 17, par. 6404(1)(l)); Pub. Act 82—951, 1982 Ill. Laws 2290—93 (amending the usury statute to exempt loans secured by any type of real estate).) Because Commercial Mortgage has not argued the applicability of the amendment to the October 1980 loan, we have no reason to consider the effect the amendment may have had on the transaction.

Commercial Mortgage next argues that, if the loan was usurious, a borrower who either initiates or actively participates in a usurious transaction is estopped from asserting the defense of usury. In support of this argument, Commercial Mortgage relies on *Rogus v. Continental Illinois National Bank & Trust Co.* (1972), 4 Ill.

App. 3d 557, and *Cohn v. Receivables Finance Co.* (1970), 123 Ill. App. 2d 224. Commercial Mortgage contends that not only does the evidence support a finding that the Olsons initiated and participated in the transaction in question but also notes that the trial judge specifically found that the Olsons were active participants in securing the usurious loan. Commercial Mortgage concludes that the Olsons are therefore estopped from asserting a usury defense.

This argument is without merit. The cases relied on by Commercial Mortgage do not hold that a borrower who initiates or participates in a loan, which is made on usurious terms, is precluded from defending on the ground that the loan was usurious. If such were the case, the usury defense would be unavailable in the case of most usurious loans, since the borrower usually takes the initial step in obtaining any loan, usurious or otherwise. Rather, the cases cited by Commercial Mortgage hold that a borrower who first injects usury into the transaction by proposing to pay interest above the legal rate is estopped from raising a usury defense. Without expressing an opinion on the correctness of the appellate court cases relied on by Commercial Mortgage, we note that the issue presented by the facts of those cases is not present here. We hold, therefore, that the usury defense is available in cases such as this where, although the borrower initiated and participated in the loan, the lender initiated the plan to evade the usury statute.

Moreover, a rule of law that precludes borrowers from raising the usury defense simply because they initiate and then participate in securing the loan would be inconsistent with the Illinois usury statute. Section 5 of the Interest Act (recodified as Ill. Rev. Stat. 1987, ch. 17, par. 6412) prohibits the acceptance or receipt of interest in excess of that authorized by law. Further, section 6 of the Act (recodified as Ill. Rev. Stat. 1987, ch.

17, par. 6413) provides that statutory penalties, attorney fees and court costs may be assessed against a party who knowingly contracts for or receives unlawful interest. Thus, it is clear from these provisions that the legislature intended that lenders, and not borrowers, should bear the risk of engaging in a usurious transaction. We see no reason to shift the risk to the borrower in this case where the lender initiated the usurious aspect of the loan and where the lender and borrower then jointly participated in the plan to evade the usury statute.

Finally, Commercial Mortgage argues that this court should not permit the Olsons to raise the affirmative defense of usury because allowing them to do so will have a chilling effect on legitimate financial transactions. Commercial Mortgage predicts that lending institutions will be deterred from making business loans if business persons are allowed to obtain loans by signing business purpose statements and then have the transactions set aside by showing years later that no business purpose was ever intended. Commercial Mortgage suggests that lending institutions will be unable to refute the testimony of borrowers trying to avoid their financial obligations since, with the passage of time, witnesses for the lender will be either unavailable or unable to recall the conversations that occurred at the time the loan was made.

The concerns articulated in this argument are identical to the concerns which underlie statutes of limitation. (See *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1975), 61 Ill. 2d 129, 132; *Horn v. City of Chicago* (1949), 403 Ill. 549, 560; *Leitch v. New York Central R.R. Co.* (1944), 388 Ill. 236, 245.) Thus, it appears that Commercial Mortgage asks, in effect, that we find the usury defense time barred from the beginning, but that we allow the lender's cause of action to proceed on the loan documents which Commer-

cial Mortgage believes should speak for themselves. Because we believe that public policy would be thwarted rather than advanced by the adoption of Commercial Mortgage's public policy argument, we reject the° argument.

For the reasons stated, the judgment of the appellate court, reversing the trial court's decision and remanding the cause for further proceedings, is affirmed.

*Judgment affirmed.*