THE CITY OF ROLLING MEADOWS, Plaintiff-Appellee, v. NATIONAL ADVERTISING COMPANY *et al.*, Defendants-Appellants.

First District (5th Division)   No. 1—89—3080

Opinion filed November 27, 1991.—Rehearing denied June 4, 1992.

---

*Justice White concurred with this opinion prior to his retirement.

738

Robert C. Kenny, of Schain, Firsel & Burney, Ltd., of Chicago, for appellants Universal Outdoor, Inc., and Citizens Bank & Trust Company.

Gordon & Glickson, P.C., of Chicago (Sanford M. Stein, Jean Marie R. Pechette, and Sarah K. Nadelhoffer, of counsel), for appellants National Advertising Company, P.K. Neuses, Inc., and First National Bank of Arlington Heights.

Rose & Ross, Ltd., of Rolling Meadows (Donald M. Rose and Kathleen Ross, of counsel), for appellee.

PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Following a bench trial, judgment was entered in favor of plaintiff, the City of Rolling Meadows (city), enforcing a restrictive covenant which prohibited off-premise billboards in an industrial park.

Defendants now appeal and raise the following issues: (1) whether a previous Federal court action involving the city's zoning ordinance barred the present action as *res judicata*; (2) whether the issuance of permits to construct the billboards amounted to a vested property right; (3) whether the doctrine of *laches* prevented the city from enforcing the restrictive covenant; (4) whether the city's enforcement of the covenant had a proper public purpose; (5) whether it was against the manifest weight of the evidence to find that the city did not abandon its right to enforce the covenant; (6) whether it was against the manifest weight of the evidence to find that the character of the property had not changed; and (7) whether enforcement of the restrictive covenant would violate the right to freedom of speech. For the following reasons, we affirm.

This action concerns the city's complaint for declaratory and injunctive relief to enforce a restrictive covenant which applied to property it owned in an industrial park in Rolling Meadows. Defendants, P.K. Neuses, Inc., First National Bank of Arlington Heights, and Citizens Bank & Trust Company, also owned property in the park subject to the covenant and leased portions of their property to defendants, National Advertising Company (National) and Universal Outdoor, Inc. (Universal), to erect and maintain billboards.

The restrictive covenant was recorded in 1957 against most of the lots in the industrial park and allowed any owner to bring legal action to enforce them. The covenant provides:

> "Improvements erected on property subject to this declaration *** shall not exceed forty-five (45) feet in height; [p]rovided, however, [t]hat water towers or tanks *** may exceed this height with the written approval of the [Northwest Industrial Park, Inc.]
>
> * * *
>
> No billboards or advertising signs, except those identifying the name, business and products of the person or firm occupying the premises shall be permitted."

The covenant also gave Northwest Industrial Park the authority to generally supervise and enforce the covenant. That corporation was dissolved in 1966.

The city acquired property in the industrial park in 1960 and built a water tower on the property in 1961.

In 1962, the center line of Route 53 was recorded showing it would run through the industrial park, and in 1963, 20.64 acres of the 201 acres in the park were condemned for its construction. Route 53

opened for traffic in 1966 and was, at the time of this action, a six-lane highway.

In 1983, National applied for two building permits from the city to erect advertising billboards on the property it leased in the industrial park. The city denied the permits because National's proposed billboards violated the city's zoning ordinance which limited the size and height of billboards and allowed only on-premise billboards. On-premise billboards advertise a business or product of a person or firm occupying the premises.

When its permits were denied, National filed a civil rights action against the city in Federal court. It alleged that the zoning ordinance violated the right to freedom of speech because it only allowed on-premise billboards and that the size and height restrictions of the ordinance were preempted by the Highway Advertising Control Act of 1971 (Ill. Rev. Stat. 1985, ch. 121, par. 501 *et seq.*). On the city's motion, the Federal district court dismissed National's complaint. On appeal, the reviewing court reversed that decision agreeing with National's argument that the zoning ordinance was preempted by State law. (*National Advertising Co. v. City of Rolling Meadows* (7th Cir. 1986), 789 F.2d 571.) As a result of its decision, the court did not consider the freedom of speech issue. The case was remanded to the district court to "give National effective relief from the existing ordinance." (*National*, 789 F.2d at 577.) The action of the district court, on remand, is not apparent from the record in this case.

After the Federal litigation was resolved, the city amended its zoning ordinance to comply with the Highway Advertising Control Act of 1971. National again applied for permits to erect two billboards on the property it leased in the industrial park. The city issued the permits on October 29, 1986, and National began construction of the billboards.

Universal also applied for and was granted a permit to construct a billboard on the property it leased in the park. Universal also began construction of the billboard.

In November of 1986, the city learned of the restrictive covenant, applicable to most of the property in the industrial park, which prohibited improvements over 45 feet high and allowed only on-premise billboards. On December 12, 1986, the city filed the present action, a complaint for declaratory and injunctive relief, against defendants alleging that National's and Universal's billboards violated the restrictive covenant because they would be more than 45 feet high and they would display off-premise advertising. Off-premise billboards adver-

tised businesses, products, or services which were available or conducted at a location other than where the billboard was located.

The city requested a temporary restraining order to halt construction of the billboards. The trial judge denied the request and allowed National and Universal to complete construction of the billboards. Subsequently, the parties agreed that National and Universal could lease the billboards for off-premise advertising but the agreement would not prejudice the city's attempt to enforce the restrictive covenant in the present action.

Defendants moved to dismiss the complaint arguing that the covenant should not be enforced on the grounds of *res judicata, laches*, estoppel, public policy, changed character of the property, and the right to freedom of speech. The motion was denied.

Defendants answered the complaint and asserted the following as affirmative defenses: (1) the restrictive covenant violated the right to freedom of speech; (2) the city's enforcement of the covenant did not serve a public purpose for which public funds should be spent; (3) the character of the property had changed since the covenant was recorded; and (4) the city had abandoned the right to enforce the covenant.

Defendants also filed a motion for summary judgment on their affirmative defenses which was denied. The city, however, was granted summary judgment on the affirmative defenses of freedom of speech and public purpose.

Prior to trial, the parties stipulated to the following facts. The water tower on the city's property in the park was 80 feet high, but there was no documentation that the water tower was approved by the Northwest Industrial Park as required in the covenant. Pursuant to the permits issued by the city, National built two billboards on property it leased in the park which were 55 feet and 11 inches high and 56 feet and 5 inches high. Also pursuant to a permit, Universal built one billboard which was 49 feet and 8 inches high. National and Universal offered their billboards for lease to "all comers" to display commercial and noncommercial messages.

In a bench trial on the remaining issues of changed conditions and abandonment, the following evidence was presented.

Rolf Campbell, the city's land use and planning expert, testified that when the city planned the area as an industrial park, it anticipated that there would be access from a highway such as Route 53. Further, Route 53 did not change the character of the industrial park and the development of the park was consistent with the covenant. The billboards in question were incompatible with the park because

they were excluded by the covenant, architecturally incompatible with the present buildings, and provided two separate uses for one parcel which was intended to have only one use. If the covenant was enforced, there would be no hardship to the present owners because the property was being used for industrial purposes which was consistent with the intent of the covenant.

Allen Kracower, defendants' land use and planning expert, testified that Route 53 was a significant change on the property because of its size, traffic, and noise. Route 53 carried 100,000 to 150,000 cars per day through the park. He also testified that prohibiting billboards in the park was no longer relevant and that billboards were a reasonable use of the land in the park.

William McCann, defendants' real estate appraiser, testified that allowing the billboards would increase the value of the property without a detrimental impact to the other property in the park.

The trial judge found that the character of the property did not change since the time the covenant was recorded and that the city did not tolerate violations of the covenant which would have indicated an abandonment. The judge enforced the covenant and ordered National and Universal to remove the billboards. National, Universal, and their respective lessors now appeal.

OPINION

I

National first argues that the Federal litigation operates as *res judicata* to the city's attempt to enforce the restrictive covenant in this action.

Under the doctrine of *res judicata*, the final judgment of a court of competent jurisdiction is conclusive of the rights of the parties and their privies and absolutely bars subsequent actions involving the same claims or demands by the same parties or their privies. (*Catlett v. Novak* (1987), 116 Ill. 2d 63, 506 N.E.2d 586.) The bar not only extends to the issues that were actually decided in the former proceeding but also to any other issues properly involved by the subject matter which might have been raised or decided. *Best Coin-Op, Inc. v. Paul F. Ilg Supply Co.* (1989), 189 Ill. App. 3d 638, 545 N.E.2d 481.

Although the action of the Federal district court on remand is not apparent from the record in this case, the city does not challenge the finality of that decision. The parties primarily dispute whether the Federal court action and the present case involve the same claim or demand.

Illinois courts have used either the " 'same evidence' " test or the " 'transactional' " test to determine whether there is an identity of the causes of actions; however, the supreme court has not expressly adopted either test. *Best Coin-Op,* 189 Ill. App. 3d at 652-54, 545 N.E.2d at 490-91.

■ Under the same evidence test, *res judicata* will apply if the evidence needed to sustain the second cause of action would have sustained the first cause of action. (*Best Coin-Op,* 189 Ill. App. 3d 638, 545 N.E.2d 481.) Here, the city's action to enforce the restrictive covenant necessarily requires different evidence than the evidence that was required in the Federal court action involving the zoning ordinance. Although both actions involved the restriction of billboards, the Federal action was based on the city-wide zoning ordinance and this action was based on the restrictive covenant recorded in 1957 against most of the property in the industrial park. This action could have been sustained without reference to the zoning ordinance.

■ Under the "transactional" test, different theories of relief constitute a single cause of action if a single group of operative facts give rise to the assertion of relief. (*Best Coin-Op,* 189 Ill. App. 3d 638, 545 N.E.2d 481.) In this case, the Federal action was brought by National after it was denied permits in 1983. The present action was brought by the city after it granted National permits in 1986. Although both actions involve National's attempt to erect billboards in the park, they stemmed from different conduct at different times.

National relies on *Exchange National Bank v. City of Des Plaines* (1975), 32 Ill. App. 3d 722, 336 N.E.2d 8, where plaintiff challenged the application of defendant's zoning ordinance to its property. As an affirmative defense, defendant raised the issue of a restrictive covenant also applicable to the property. In this case, National contends that based on *Exchange,* the city could have and should have raised the issue of the restrictive covenant in the Federal court action. However, *Exchange* does not assist in resolving the issue presented here because it did not consider the issue of *res judicata.*

National also relies on *Furgatch v. Butler* (1988), 188 Ill. App. 3d 1060, 545 N.E.2d 140, to support its argument that *res judicata* applies in this case. In *Furgatch* the court found that a constitutional challenge to a zoning ordinance was barred under *res judicata* because it could have been raised in a prior proceeding which challenged the denial of a permit based on the zoning ordinance. In *Furgatch,* distinguished from the present case, both actions involved the application of the zoning ordinance.

The present action stems from different facts and requires different evidence than the Federal court litigation and, as a result, it was not barred under *res judicata*.

## II

National also argues that it had a vested right in the Federal court judgment and the permits issued by the city.

National relies on *Arnold & Murdock Co. v. Industrial Comm'n* (1924), 314 Ill. 251, 145 N.E. 342, which stated that a judgment is a vested property right which cannot be destroyed by giving a subsequently enacted statute retroactive effect. *Arnold* does not resolve the issue in the present case which does not involve the retroactive effect of a statute on a judgment.

In *Leisuretime Recreation Center VI, Inc. v. Byrne* (1981), 93 Ill. App. 3d 489, 417 N.E.2d 658, which National also relies on, the court stated that when a party has made a substantial change in position, by incurring expenditures and obligations in reliance on a building permit, the permit may ripen to a vested right depending on the totality of the circumstances.

■ National contends that in reliance on the permits, it incurred $40,000 to construct each billboard. However, from the time National leased the property in the park, it had constructive notice of the restrictive covenant, which was recorded in 1957, prohibiting billboards. Further, when the city filed the present action six weeks after it issued the permits, National had not yet completed construction of the billboards. National was only allowed to complete the billboards because the city's request for a temporary restraining order was denied. Under these circumstances, National did not acquire a vested right in the permits.

## III

Universal argues that *laches* bars the city from enforcing the restrictive covenant.

Under the doctrine of *laches*, a party may be precluded from asserting a claim when he unreasonably delays raising that claim which prejudices the opposing party. (*Tully v. State* (1991), 143 Ill. 2d 425, 574 N.E.2d 659.) It is within the trial court's discretion to apply the doctrine of *laches*. *City of Rochelle v. Suski* (1990), 206 Ill. App. 3d 497, 564 N.E.2d 933.

Universal relies on *City of Rochelle* to support its argument. In that case, defendant owned a trailer park in which mobile homes were installed. In 1987, the city gave defendant notice that three of the

mobile homes encroached on its property. Those homes were installed between 1969 and 1974 pursuant to permits issued by the city in 1968 or 1969. Removal of the homes would have cost defendant $25,000 and the city did not establish a need for the property. The appellate court found that *laches* may have prevented the city from asserting that the homes encroached on its property and remanded the case to the trial court for a determination of that issue.

■ Unlike *City of Rochelle*, the city in this case did not delay an unreasonable length of time after it issued the permit in asserting the restrictive covenant. The city filed this action to assert its rights under the restrictive covenant within six weeks after the permit was issued to Universal. Although Universal also relies on the city's actions toward National to support its argument, those actions could not have prejudiced Universal. As a result, in this case the trial judge did not abuse his discretion in denying Universal's claim of *laches*.

## IV

Both National and Universal argue that the city cannot enforce the restrictive covenant because it does not serve a proper public purpose.

■ Under the State constitution, public funds and property can only be used for public purposes. (Ill. Const. 1970, art. VIII, §1(a).) Public funds cannot be devoted to a purely private purpose. (*O'Fallon Development Co. v. City of O'Fallon* (1976), 43 Ill. App. 3d 348, 356 N.E.2d 1293.) Whether acting in its proprietary or governmental capacity, the test is whether the attempted private use of municipal property subserves the public interest and benefits a private individual or corporation only incidentally. (*O'Fallon Development Co. v. City of O'Fallon* (1976), 43 Ill. App. 3d 348, 356 N.E.2d 1293.) In *O'Fallon*, which Universal relies on, the court held that the city could not allow a private corporation to advertise on the city's water tower.

Unlike *O'Fallon*, the present case does not involve the use of public money or property for private purposes. The city is acting in its own interest to enforce the covenant applicable to its property in the industrial park. Aesthetics and traffic safety are valid policy reasons for government regulation of billboards. (*National Advertising Co. v. Village of Downers Grove* (1990), 204 Ill. App. 3d 499, 561 N.E.2d 1300.) Similarly, the city has a valid public purpose to achieve the same objectives through enforcement of the restrictive covenant in this case.

## V

National and Universal also argue that the trial judge erred when he found, after a bench trial, that the city did not abandon its right to enforce the covenant.

Restrictive covenants will not be enforced when property owners have acquiesced in prior violations of the covenants. (*Rogers v. City of Jerseyville* (1990), 196 Ill. App. 3d 136, 552 N.E.2d 1314.) However, minor violations of a restriction do not prohibit subsequent enforcement of the covenant. (*Amoco Realty Co. v. Montalbano* (1985), 133 Ill. App. 3d 327, 478 N.E.2d 860.) The trial judge's decision after a bench trial will not be disturbed on review unless it was against the manifest weight of the evidence. *Commercial Mortgage & Finance Co. v. Life Savings* (1989), 129 Ill. 2d 42, 541 N.E.2d 661.

█ National and Universal contend that the evidence at trial established that the city acquiesced in a prior violation of the covenant when it constructed the water tower. The tower was 80 feet high. Although the covenant allowed construction of a water tower in excess of 45 feet with written approval of the Northwest Industrial Park, the city did not produce evidence at trial that it received such approval. The trial judge found that the city's failure to produce written approval did not establish that the tower was constructed without such approval. It cannot be said that this determination was against the manifest weight of the evidence. Further, even if there was no approval for the water tower, a minor violation of a covenant does not establish that the city abandoned the covenant.

National and Universal also contend that the city acquiesced in a violation of the covenant when it issued permits to construct the billboards in question. The evidence at trial established that the city learned of the restrictive covenants one month after it issued the permits. It immediately filed the present action to enforce them. The billboards were only completed because the trial judge denied the city's request for a temporary restraining order. As a result, the city's act of issuing the permits did not automatically establish that it abandoned the covenants.

The trial judge's decision that the city did not abandon the right to enforce the covenant was not against the manifest weight of the evidence.

## VI

National and Universal also argue that the trial judge erred when

he found that enforcement of the restrictive covenant was equitable because the character of the industrial park did not change.

A restrictive covenant should not be enforced if the character and environment of the property have changed to the extent that the objective of the restriction cannot be accomplished by its enforcement or if it would be unreasonable or oppressive to enforce it. (*Rogers*, 196 Ill. App. 3d 136, 552 N.E.2d 1314.) The decision of the judge after a bench trial will not be disturbed on appeal unless it was against the manifest weight of the evidence. *Commercial*, 129 Ill. 2d 42, 541 N.E.2d 661.

■■ National and Universal contend that the evidence at trial showed Route 53 changed the character of the industrial park to such an extent that enforcement of the covenant was unreasonable. However, the testimony of the parties' experts, Campbell and Kracower, conflicted on this point. Campbell testified that when the area was planned as an industrial park, it was expected that there would be access to the area from a highway such as Route 53. Campbell also testified that the character of the park had not changed because it was being used as an industrial park consistent with the intent of the covenant. On the other hand, Kracower testified that Route 53 was a significant change to the industrial park because of its size, the amount of traffic it carried, and the noise it caused. Further, he testified that billboards were a reasonable use of the land near Route 53.

The trial judge, as the trier of fact, was required to resolve the conflicting testimony and his decision that the character of the property had not changed was supported by the evidence. Most notably, Route 53 was consistent with the plan for the industrial park and, even if the covenant was enforced, the owners of the property in the park could continue to use their property for industrial purposes. Accordingly, enforcement of the covenant was not unreasonable and the decision of the judge was not against the manifest weight of the evidence.

## VII

Lastly, National and Universal argue that the restrictive covenant cannot be enforced because it violates their right to freedom of speech. They contend that the paragraph of the covenant which only allows on-premise billboards restricts their right to display noncommercial messages.

National and Universal rely on *Shelley v. Kraemer* (1948), 334 U.S. 1, 92 L. Ed. 1161, 68 S. Ct. 836, where the Supreme Court held it would not enforce a restrictive covenant that would violate constitu-

tional rights. They argue that the restrictive covenant prohibiting off-premise billboards violates their right to free speech relying on *Metromedia, Inc. v. City of San Diego* (1981), 453 U.S. 490, 69 L. Ed. 2d 800, 101 S. Ct. 2882. In *Metromedia*, the Supreme Court held that an ordinance permitting on-premise commercial advertising but prohibiting other commercial advertising and noncommercial advertising violated the right to freedom of speech. The court found that the ordinance could value commercial messages relating to on-premise business over commercial messages relating to off-premise business. However, the ordinance could not protect commercial speech more than noncommercial speech. "Insofar as the city tolerates billboards at all, it cannot choose to limit their content to commercial messages; the city may not conclude that the communication of commercial information concerning goods and services connected with a particular site is of greater value than the communication of noncommercial messages." *Metromedia*, 453 U.S. at 513, 69 L. Ed. 2d at 818, 101 S. Ct. at 2895.

National and Universal argue that under *Metromedia* the restrictive covenant unconstitutionally prohibits the display of noncommercial messages because it allows only the display of on-premise commercial messages. They urge this court to hold that enforcement of the restrictive covenant violates freedom of speech.

National and Universal ignore, however, the fact that their proposed billboards violate the height restrictions of the covenant. The covenant prohibits improvements over 45 feet high. The three billboards which National and Universal constructed were between 49 feet and 56 feet high, exceeding the limitation. Regardless of the message that their billboards may carry, whether it is commercial or noncommercial, there is no question that the billboards violate the height restriction of the covenant. As a result, whether enforcement of the covenant would violate freedom of speech is not at issue. Even if this court were to find that the restrictive covenant violated the freedom of speech, the height restriction of the covenant would still bar National's and Universal's billboards.

For the foregoing reasons, the decision of the trial judge is affirmed.

Affirmed.

GORDON and McNULTY, JJ., concur.